UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :

  UNITED STATES OF AMERICA         :

                                     :

      - v. -                 :

                                     :        S6 20 Cr. 160 (MKV)

  SETH FISHMAN, and             :
  LISA GIANNELLI,               :

                                     :

           Defendants.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## THE GOVERNMENT'S MOTIONS *IN LIMINE*

DAMIAN WILLIAMS
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Andrew C. Adams
Sarah Mortazavi
Assistant United States Attorneys
    *– Of Counsel –*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

RELEVANT FACTS .............................................................................................................. 2

ARGUMENT ......................................................................................................................... 4

    I. Statements of the Defendants and Defendants' Agents and Co-Conspirators Are Admissible Against Each Defendant ........................................................................................................ 4

        A. Background ............................................................................................................ 4

        B. Applicable Law ...................................................................................................... 6

        C. Discussion ............................................................................................................ 11

    II. The Court Should Preclude Defendants From Offering Their Own Statements ................ 14

    III. The Government Should be Permitted to Introduce Seth Fishman's Proffer Statements if the Door is Opened. ..................................................................................................................... 15

        A. Background .......................................................................................................... 15

        B. Applicable Law .................................................................................................... 16

        C. Discussion ............................................................................................................ 20

    IV. The Court Should Preclude Defense Counsel From Offering Evidence or Arguments Speculating As To Why Other Individuals or Entities Engaged in Activities Similar to the Charged Conduct Were Not the Subject of Criminal Prosecution ........................................... 21

    V. Cross-Examination of FBI and FDA Agents and Employees Should be Limited to their Credibility and the Topics to which they Testify on Direct ..................................................... 22

    VI. The Defendants Should Be Precluded From Invoking an Advice of Counsel Defense ..... 23

    VII. The Defendants Should Be Precluded From Offering A Defense of Public Authority or Entrapment by Estoppel......................................................................................................... 26

    VIII. Evidence or Argument Concerning the Defendants' Health, Addictions, Family Background, Age, Education, or Any Other Personal Factor Unconnected to Guilt Should Be Precluded, As Should Discussions of Punishment .................................................................. 29

    IX. The Court Should Admit As Non-Hearsay Records From the Delaware State Division of Professional Regulation Investigation Into Fishman and Giannelli ......................................... 31

    X. The Court Should Admit Fishman's Statements to the Federal Bureau of Investigation and the U.S. Attorney's Office for the Eastern District of New York in connection with the Prosecution of David Brooks ................................................................................................. 34

    XI. Fishman's Sales of Misbranded and Adulterated Drugs to Clients Located Abroad and Clients Engaged in Activities Other than Racing are Direct Evidence of the Charged Offenses ............................................................................................................................... 35

i

XII. The Defendants Should Be Precluded From Offering Expert Witness Testimony by Dr. Clara Fenger, DVM ................................................................................................................ 39

   A. Applicable Law ................................................................................................ 40

   B. Discussion ....................................................................................................... 43

XIII. The Court Should Limit Cross-Examination as to Prior Conduct of Cooperating Witnesses ........................................................................................................................ 48

   A. Applicable Law ................................................................................................ 50

   B. Discussion ....................................................................................................... 52

CONCLUSION ................................................................................................................ 58

# TABLE OF AUTHORITIES

**Supreme Court Opinions**

*Bourjaily v. United States*,
    483 U.S. 171 (1987) ................................................................... 7, 8, 40

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ......................................................................... 40

*Delaware v. Van Arsdall*,
    475 U.S. 673 (1986) ......................................................................... 50

*General Elec. Co. v. Joiner*,
    522 U.S. 136 (1997) .................................................................... 40, 44

*Kumho Tire Company, Inc. v. Carmichael*,
    526 U.S. 137 (1999) ......................................................................... 40

*Shannon v. United States*,
    512 U.S. 573 (1994) ................................................................. 30-31, 31

*United States v. Mezzanatto*,
    513 U.S. 196 (1995) ......................................................................... 16

**Federal Court Opinions**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
    303 F.3d 256 (2d Cir. 2002) ............................................................... 41

*Bryant v. Serebrenik*,
    No. 15-CV-3762ARRCLP, 2017 WL 713897 (E.D.N.Y. Feb. 23, 2017) ............... 51

*Farganis v. Town of Montgomery*,
    397 F. App'x 666 (2d Cir. 2010) .......................................................... 53

*Feis v. United States*,
    394 F. App'x 797 (2d Cir. 2010) ........................................................... 6

*Flythe v. District of Columbia*,
    4 F. Supp. 3d 222 (D.D.C. 2014) ..................................................... 57, 58

iii

*Highland Capital Mgmt., L.P. v. Schneider,*
   551 F. Supp. 2d 173 (S.D.N.Y. 2008) ............................................................. 41-42

*Highland Capital Mgmt., L.P. v. Schneider,*
   379 F. Supp. 2d 461 (S.D.N.Y. 2005) ................................................................. 42

*Hygh v. Jacobs,*
   961 F.2d 359 (2d Cir. 1992) ................................................................................ 42

*In re Grand Jury Proceedings,*
   219 F.3d 175 (2d Cir. 2000) ................................................................................ 25

*In re Reserve Fund Sec. & Derivativve Litig.,*
   No. 09 Civ. 4346 (PGG), 2012 WL 12354233 (S.D.N.Y. Oct. 3, 2012) ................. 7

*LaSalle Bank Nat'l Ass'n v. CIBC Inc.,*
   2012 WL 466785 (S.D.N.Y. Feb. 14, 2012) ........................................................ 42

*Lurie v. Wittner,*
   228 F.3d 113 (2d Cir. 2000) ................................................................................ 24

*Pappas v. Middle Earth Condo. Ass'n,*
   963 F.2d 534 (2d Cir. 1992) .................................................................................. 6

*Spratt v. Verizon Commc'ns Inc.,*
   No. 11 Civ. 273 (AJN), 2014 U.S. Dist. LEXIS 136895 (S.D.N.Y. Sept. 17, 2014) ............ 10

*United States v. Dambruck,*
   270 F. App'x 30 (2d Cir. 2008) ........................................................................... 10

*United States v. Achter,*
   52 F.3d 753 (8th Cir. 1995) ................................................................................. 29

*United States v. Alvarado,*
   808 F.3d 474 (11th Cir. 2015) ............................................................................. 27

*United States v. Amato,*
   540 F.3d 153 (2d Cir. 2008) ................................................................................ 54

*United States v. Anderson,*
   139 F.3d 291 (1st Cir. 1998) ............................................................................... 54

*United States v. Barone,*
   913 F.2d 46 (2d Cir. 1990) ....................................................................... 10-11

*United States v. Barrow,*
   400 F.3d 109 (2d Cir. 2005) ........................................................ 16, 17, 18, 19, 20

*United States v. Battaglia,*
   No. S9 05 Cr. 774 (KMW), 2008 WL 144826 (S.D.N.Y. Jan. 15, 2008) ............................. 30

*United States v. Bilzerian,*
   926 F.2d 1285 (2d Cir. 1991) ..................................................................... 24

*United States v. Bowen,*
   511 F. Supp. 3d 441 (S.D.N.Y. 2021) ........................................................... 54-55

*United States v. Boykoff,*
   67 F App'x 15 (2d Cir. 2003) ..................................................................... 46

*United States v. Bryant,*
   520 Fed. App'x 11 (2d Cir. Apr. 3, 2013) ........................................................ 19

*United States v. Buck,*
   No. 13 CR. 282 (JSR), 2017 WL 5201447 (S.D.N.Y. Oct. 30, 2017) .................................. 25

*United States v. Calderon-Urbina,*
   756 F. Supp.2d 566 (S.D.N.Y. 2010) ............................................................. 54

*United States v. Caron,*
   64 F.3d 713 (1st Cir. 1995) ...................................................................... 28

*United States v. Colasuomo,*
   697 F.3d 164 (2d Cir. 2012) ...................................................................... 24

*United States v. Collins,*
   61 F.3d 1379 (9th Cir. 1995) ..................................................................... 28

*United States v. Corso,*
   20 F.3d 521 (2d Cir. 1994) ....................................................................... 28

*United States v. Desena,*
   260 F.3d 150 (2d Cir. 2001) ................................................................. 8, 9, 11

*United States v. Devery,*
    935 F. Supp. 393 (S.D.N.Y. 1996) ............................................................... 51, 52

*United States v. DeVillio,*
    983 F.2d 1185 (2d Cir. 1993) ........................................................................... 7

*United States v. Diaz,*
    176 F.3d 52 (2d Cir. 1999) ......................................................................... 8, 12

*United States v. Dupre,*
    462 F.3d 131 (2d Cir. 2006) ........................................................................... 10

*United States v. Dupree,*
    706 F.3d 131 (2d Cir. 2013) ....................................................................... 9, 10

*United States v. Durham,*
    No. 07 Cr. 345 (LEK), 2008 WL 5111286 (N.D.N.Y. Dec. 3, 2008) ............................. 56-57

*United States v. Edwards,*
    101 F.3d 17 (2d Cir. 1996) (per curiam) ........................................................... 28

*United States v. Estrada,*
    430 F.3d 606 (2d Cir. 2005) ............................................................... 53, 57, 58

*United States v. Etheridge,*
    932 F.2d 318 (4th Cir. 1991) ..................................................................... 28, 29

*United States v. Evangelista,*
    122 F.3d 112 (2d Cir. 1997) ......................................................................... 24

*United States v. Fernandez,*
    839 F.2d 639 (9th Cir. 1987) ......................................................................... 14

*United States v. Figueroa,*
    548 F.3d 222 (2d Cir. 2008) ......................................................................... 50

*United States v. Flaharty,*
    295 F.3d 182 (2d Cir. 2002) ........................................................................... 9

*United States v. Funches,*
    135 F.3d 1405 (11th Cir. 1998) ..................................................................... 28

*United States v. Giffen,*
    473 F.3d 30 (2d Cir. 2006) ............................................................... 27, 28

*United States v. Gigante,*
    166 F.3d 75 (2d Cir. 1999) ...................................................................... 7

*United States v. Gil,*
    297 F.3d 93 (2d Cir. 2002) .............................................................. 27, 29

*United States v. Giovinco,*
    No. 18 Cr. 14 (JSR), 2020 WL 832920 (S.D.N.Y. Feb. 20, 2020) ....................................... 55

*United States v. Gupta,*
    747 F.3d 111 (2d Cir. 2014) ................................................................. 13

*United States v. Gutierrez-Gonzalez,*
    184 F.3d 1160 (10th Cir. 1999) ............................................................. 28

*United States v. Harris,*
    491 F.3d 440 (D.C. Cir. 2007) .............................................................. 30

*United States v. Harvey,*
    991 F.2d 981 (2d Cir. 1993) ................................................................ 52

*United States v. Hatfield,*
    No. 06-CR-0550 (JS), 2010 WL 183522 (E.D.N.Y. Jan. 8, 2010) ........................................ 25

*United States v. Hayes,*
    553 F.2d 824 (2d Cir. 1977) ................................................................ 53

*United States v. James,*
    712 F.3d 79 (2d Cir. 2010) ................................................................. 50

*United States v. Jefferson,*
    215 F.3d 820 (8th Cir. 2000) ................................................................. 9

*United States v. Kelley,*
    305 F. App'x 705 (2d Cir. 2009) ............................................................. 6

*United States v. Kloszewski,*
    No. 17-4054, 2019 WL 181175 (2d Cir. Jan. 14, 2019) ....................................... 11

*United States v. Laljie*,
    184 F.3d 180 (2d Cir. 1999) ............................................... 52

*United States v. Lanza*,
    790 F.2d 1015 (2d Cir. 1986) ............................................. 56

*United States v. Lozano-Reyes*,
    101 F.3d 686 (2d Cir. June 1996) ........................................ 9

*United States v. Mahler*,
    579 F.2d 730 (2d Cir. 1978) ............................................... 53

*United States v. Maldonado-Rivera*,
    922 F.2d 934 (2d Cir. 1990) .............................. 7, 8, 9, 13, 51

*United States v. Marin*,
    669 F.2d 73 (2d Cir. 1982) ............................................ 14, 15

*United States v. Mayers*,
    216 F. App'x 77 (2d Cir. 2007) .......................................... 10

*United States v. Mejia*,
    545 F.3d 179 (2d. Cir. 2008) ............................................. 41

*United States v. Mergen*,
    764 F.3d 199 (2d Cir. 2014) ............................................... 27

*United States v. Mouallem*,
    566 F. App'x 82 (2d Cir. 2014) ........................................... 9

*United States v. Nersesian*,
    824 F.2d 1294 (2d Cir. 1987) ......................................... 42-43

*United States v. Ormsby*,
    252 F.3d 844 (6th Cir. 2001) ........................................ 28, 29

*United States v. Paccione*,
    949 F.2d 1183 (2d Cir. 1991) ....................................... 29-30

*United States v. Padilla*,
    203 F.3d 156 (2d Cir. 2000) .............................................. 8

*United States v. Palumbo,*
    401 F.2d 270 (2d Cir. 1968) ................................................................. 53

*United States v. Paulino,*
    445 F.3d 211 (2d Cir. 2006) ................................................... 5, 9, 13-14

*United States v. Pedraza,*
    27 F.3d 1515 (10th Cir. 1994) ............................................................. 56

*United States v. Quinones,*
    417 F. App'x 65 (2d Cir. 2011) ............................................................ 24

*United States v. Rabinowitz,*
    578 F.2d 910 (2d Cir. 1978) ................................................................. 54

*United States v. Rahme,*
    813 F.2d 31 (2d Cir. 1987) ..................................................................... 8

*United States v. Rastelli,*
    870 F.2d 822 (2d Cir. 1989) ............................................................. 8, 12

*United States v. Rawlins,*
    696 F. App'x 22 (2d Cir. 2017) ............................................................ 55

*United States v. Rea,*
    958 F.2d 1206 (2d Cir. 1992) ............................................................... 14

*United States v. Rector,*
    111 F.3d 503 (7th Cir. 1997) ............................................................... 28

*United States v. Rioux,*
    97 F.3d 658 (2d Cir. 1996) ................................................................... 12

*United States v. Rivera,*
    22 F.3d 430 (2d Cir. 1994) ....................................................... 8, 33, 34

*United States v. Rivera,*
    971 F.2d 876 (2d Cir. 1992) ................................................................. 22

*United States v. Rodriguez,*
    761 F. App'x 53, 57 (2d Cir. 2019) ................................................. 11-12

*United States v. Roldan-Zapata,*
   916 F.2d 795 (2d Cir. 1990) ................................................. 51

*United States v. Rosa,*
   11 F.3d 315 (2d Cir. 1993) ................................................. 54

*United States v. Rosemond,*
   841 F.3d 95 (2d Cir. 2016) ................................................. 17

*United States v. Sash,*
   444 F. Supp. 2d 224 (S.D.N.Y. 2006) ................................................. 28

*United States v. Sasso,*
   59 F.3d 341 (2d Cir. 1995) ................................................. 51

*United States v. Scali,*
   No. 16-CR-466 (NSR), 2018 WL 461441 (S.D.N.Y. Jan. 18, 2018) ................................... 25

*United States v. Scarpa,*
   897 F.2d 63 (2d Cir. 1990) ................................................. 45

*United States v. Scarpa,*
   913 F.2d 993 (2d Cir. 1990) ................................................. 51

*United States v. Schulte,*
   No. S2 17 CR. 548 (PAC), 2020 WL 133620 (S.D.N.Y. Jan. 13, 2020) ............................ 25

*United States v. Scop,*
   846 F.2d 135 (2d Cir. 1988) ................................................. 42

*United States v. Simmons,*
   923 F.2d 934 (2d Cir. 1991) ................................................. 8

*United States v. Shaw,*
   354 Fed. Appx. 439 (2d Cir. Sept. 16, 2009) ................................................. 18

*United States v. Siraj,*
   No 05-Cr-104, 2006 WL 2738952 (E.D.N.Y. Sept. 25, 2006) ............................. 55

*United States v. Sorrentino,*
   72 F.3d 294 (2d Cir. 1995) ................................................. 9-10

*United States v. Spires,*
   79 F.3d 464 (5th Cir. 1996) ................................................. 28

x

*United States v. Stewart*,
 185 F.3d 112 (3d Cir. 1999) ................................................................ 29

*United States v. Stratton*,
 779 F.2d 820 (2d Cir. 1985) ................................................................ 10

*United States v. Tarantino*,
 846 F.2d 1384 (D.C. Cir. 1988) .............................................................. 8

*United States v. Thiongo*,
 344 F.3d 55 (1st Cir. 2003) ................................................................ 55

*United States v. Ulbricht*,
 79 F. Supp. 3d 466 (S.D.N.Y. 2015) ........................................................ 7

*United States v. Ulloa*,
 942 F. Supp. 2d 202 (D.N.H. 2013) ........................................................ 55

*United States v. Velez*,
 354 F.3d 190 (2d Cir. 2004) ................................................................ 16

*United States v. Walker*,
 191 F.3d (2d Cir. 1999) .................................................................... 46

*United States v. Wells Fargo Bank N.A.*,
 No. 12-CV-7527 JMF, 2015 WL 3999074 (S.D.N.Y. June 30, 2015) ................... 25

*United States v. Whitley*,
 No. 04 Cr. 1381 (RCC), 2005 WL 2105535 (S.D.N.Y. Aug. 31, 2005) ............... 57

*United States v. Whitworth*,
 856 F.2d 1268 (9th Cir. 1998) .............................................................. 54

*United States v. Yousef*,
 327 F.3d 56 (2d Cir. 2003) ................................................................ 14

## PRELIMINARY STATEMENT

The Government respectfully moves the Court *in limine* for an order:

(1) Permitting the admission of statements by the defendants, their co-conspirators, their agents or employees, and third parties;

(2) Precluding the defendants from introducing their own statements made in furtherance of the conspiracy;

(3) Permitting the Government to admit Seth Fishman's proffer statements should Seth Fishman or his defense attorneys open the door to these statements;

(4) Precluding any evidence or argument by the defense that speculates why other individuals or entities engaged in the same activity as the offense conduct were not the subject of Food and Drug Administration ("FDA") civil enforcement actions or criminal prosecutions;

(5) Limiting cross-examination of FBI and FDA law enforcement agents and employees to their credibility and the substance of their testimony on direct;

(6) Precluding the defendants from invoking an advice of counsel defense;

(7) Precluding the defendants from invoking a public authority or entrapment by estoppel defense;

(8) Precluding the defendants from introducing through evidence or argument punishment, or information regarding the defendants' background or personal factors unrelated to guilt;

(9) Permitting the Government to admit as non-hearsay records from the Delaware State Division of Professional Regulation's investigation into Fishman and Giannelli;

(10) Permitting the Government to admit Fishman's voluntary statements to the Federal Bureau of Investigation and the U.S. Attorney's Office for the Eastern District of New York in connection with the prosecution of David Brooks;

1

(11) Permitting the Government to admit Fishman's sales of adulterated and misbranded drugs to clients located abroad and those engaged in activities other than racing as direct proof of the charged offenses;

(12) Preclude expert testimony by Seth Fishman's proposed expert witness, Dr. Clara Fenger, DVM; and

(13) Precluding cross-examination as to prior conduct of cooperating witnesses.

## **RELEVANT FACTS**

For years, Seth Fishman – in 2 separate conspiracies, one in which co-defendant Lisa Giannelli was a participant – sold adulterated and misbranded animal drugs that Fishman manufactured, and that Giannelli promoted, sold, and delivered, with the intent to defraud or mislead. Fishman and Giannelli specifically targeted clients in the racehorse industry, peddling dozens of new drugs that purported to have performance-enhancing effects on racehorses. Fishman created and produced (or directed others to produce) scores of new animal drugs that were adulterated and/or misbranded for a number of reasons, including because: (1) they were not manufactured in facilities registered with the U.S. Food and Drug Administration ("FDA"); (2) were labeled with deficient or misleading information; (3) were not dispensed pursuant to valid veterinary prescriptions; and (4) lacked requisite FDA approval.  Many of these drugs, despite being described by Seth Fishman as having a performance-enhancing effect on racehorses, were likewise promoted as untestable under typical drug screens.  Fishman extolled the virtues of his drugs, specifically, by describing his method of creating customized products for individual customers in order to silo product lines to reduce the collateral consequences of a trainer getting caught using Fishman's drugs.

Fishman, though a licensed veterinarian, did not practice veterinary medicine in connection with his drug sales; he did not examine, treat, and diagnose racehorses; and he did not issue prescriptions for the drugs he distributed. In this respect, Fishman was not distributing medications as a licensed medical professional; he and Giannelli were widely selling performance-enhancing drugs to laypeople for the express purpose of boosting a racehorse's performance without getting caught. Fishman distributed drugs within the United States as well as overseas. Giannelli, Fishman's primary sales representative and distributor – who holds no medical or pharmaceutical license – traveled to racehorse training facilities in the Northeastern United States and offered to sell Fishman's drugs on demand, without regard to the existence of any prescription, the medical need for such drugs, or the legality (or propriety) of selling such drugs directly to racehorse trainers. Fishman's operation targeted clients both domestically and abroad, with each category of clients purchasing the same set of misbranded and adulterated drugs. Domestically, Fishman's principal sales representative was Giannelli, whom Fishman supplied with his drugs, knowing that Giannelli re-distributed those drugs to buyers throughout the northeast United States.

In distributing these drugs, Fishman and Giannelli catered to racehorse trainers looking to gain a competitive edge by doping racehorses to improve their race performance, and were squarely focused on ensuring that they and their customers would not get caught doing so. To that end, Fishman and Giannelli discussed whether they could trust new clients before selling to them and blacklisted indiscreet trainers. The Government anticipates, moreover, that witnesses called at the trial of Fishman and Giannelli will further describe Fishman's statements regarding the fundamental need for his drugs to remain untestable to ensure the viability of his business. In distributing these drugs, Fishman and Giannelli intended to mislead or defraud multiple state and

3

federal agencies and entities,[1] through various deceptive tactics, including by listing misleading information on the labels of Fishman's drugs to make them appear innocuous if they were to be found in a barn search or in Giannelli's possession; designing drugs so as to be untestable on standard drug screens; and misrepresenting shipments of drugs so as to conceal the nature and apparent purpose of the drugs contained in those shipments.

## ARGUMENT

### I.  Statements of the Defendants and Defendants' Agents and Co-Conspirators Are Admissible Against Each Defendant

#### A.  Background

The Government expects to elicit and offer certain out-of-court statements made by others involved in Fishman's conspiracy and in furtherance of that conspiracy. These statements will be admissible as statements of co-conspirators in furtherance of the conspiracy pursuant to under Federal Rule of Evidence 801(d)(2)(E); or as statements of agents and employees of the

---

[1] Among the victims contemplated by the defendants' misleading and deceptive conduct are the following: (1) state gaming commissions in the states where Fishman's products were mailed or sold (for example, the racing commissions in Florida – where Fishman and his most important Thoroughbred trainer-customer were based, New Jersey – where Fishman suspected he was the subject of a sting operation, New York – where Giannelli distributed Fishman's drugs, and Delaware – where Giannelli was based and where Fishman and Giannelli were in fact the subject of an investigation by the State of Delaware Division of Professional Regulation, among others); (2) the State of Delaware Division of Professional Regulation, which oversees professional licensure in Delaware; (3) the FDA and state drug regulators; (4) Customs and Border Protection (the "CBP"), and other entities that report information to the CBP; (5) customs officials in foreign countries, including Canada, Singapore, and the United Arab Emirates; (6) racetrack personnel in the states and countries where Fishman's customers raced horses doped by Fishman's products; and (7) pharmacies and drug suppliers that fulfilled orders for prescription drugs under the belief that they were ordered by Fishman pursuant to the operations of a lawful veterinary practice, and not by Giannelli for the illicit purpose of distributing these drugs to racehorse trainers with no lawful prescription.

defendant while acting within the scope of that agency relationship, which are admissible under Federal Rule of Evidence 801(d)(2)(D).[2]

As the Government will establish at trial through witness testimony, documents, intercepted calls, and text messages during the relevant time period, Fishman and Giannelli operated under the auspices of a Florida-based company founded by Fishman, "Equestology," through which Fishman and Giannelli marketed their adulterated and misbranded drugs. Fishman was also a shareholder in a Massachusetts-based company, Twenty-first Century Biochemicals ("Twenty-first Century"), which – for at least part of the relevant time period – manufactured components of new animal drugs pursuant to Fishman's requests and specifications, and shipped the same directly to Fishman in Florida, or to Giannelli in Delaware, for purposes of further redistribution to consumers. Fishman, through Equestology, employed multiple people over the course of the conspiracy; likewise, Fishman or his employees engaged with multiple parties employed at Twenty-first Century, including Jordan Fishman, a convicted co-defendant and co-conspirator, and Jordan Fishman's employees.  Likewise, in the course of the conspiracy, both Giannelli and Fishman conversed with customers and potential customers of Fishman's products for the purpose of discussing, among other things: (1) placing orders for Seth Fishman's drugs; (2) discussing the administration, efficacy, and effect of Fishman's drugs; (3) the indiscretion or trustworthiness of existing or new clients; (4) Fishman's methodology for creating the new animal

---

[2] The Government anticipates offering statements in the form of questions, directions, or other statements not offered for their truth, as uttered by the defendants, co-conspirators, and/or agents and employees of the defendants. These statements are, by definition, not hearsay. *See United States v. Paulino,* 445 F.3d 211, 216-17 (2d Cir. 2006) ("It has long been the rule that so long as statements are not presented for the truth of the matter asserted, but only to establish a context, the defendant's Sixth Amendment rights are not transgressed." (internal quotation marks, brackets, and ellipses omitted)).

drugs. These conversations, whether held by Fishman or Giannelli, are admissible against each of these jointly-tried defendants.

B. <u>Applicable Law</u>

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted" and generally is not admissible unless it falls within one of the exclusions or exceptions to the rule against the admissibility of hearsay. *See* Fed. R. Evid. 801(c), 802. One such exclusion is that an out of court statement made by a defendant, and offered by the Government against the defendant, is not hearsay and admissible as a party admission. *See* Fed. R. Evid. 801(d)(2)(A).

Thus, it is axiomatic that the defendant's own statements may be offered against him at trial pursuant to Rule 801(d)(2)(A). Likewise, Rule 801(d)(2)(D) of the Federal Rules of Evidence allows for the introduction of statements if "offered against an opposing party" and "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." To admit a statement under this rule, the court must find "(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." *Feis v. United States*, 394 F. App'x 797, 799 (2d Cir. 2010) (quoting *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992)). As the Second Circuit has explained, "admissibility under this rule should be granted freely," and there is a "liberal" standard for admissibility rooted in the understanding that agents and employees are usually the people "best informed about certain acts committed in the course of [their] employment." *Pappas*, 963 F.2d at 537 . Applying this rule, courts have found a wide range of agent and employee statements admissible. *See, e.g., United States v. Kelley*, 305 F. App'x 705, 708 (2d Cir. 2009) (forms signed by one business partner in the

6

course of business admissible against another partner); *In re Reserve Fund Sec. & Derivativve Litig*, No. 09 Civ. 4346 (PGG), 2012 WL 12354233, at *7-8 (S.D.N.Y. Oct. 3, 2012) (statements made by an employee of an entity are admissible when offered against the person who controls the entity).

Further, statements made by a co-conspirator of the defendant in furtherance of the conspiracy are also admissible. Rule 801(d)(2)(E) of the Federal Rules of Evidence provides in relevant part that "[a] statement is not hearsay if … the statement is offered against an opposing party and was made by the party's co-conspirator during and in furtherance of the conspiracy." To admit a statement under this rule, a district court must find two facts by a preponderance of the evidence: first, that a conspiracy that included the defendant and the declarant existed; and, second, that the statement was made during the course and in furtherance of that conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999).

Under this exception to the hearsay rule, "[t]he conspiracy between the declarant and the defendant need not be identical to any conspiracy that is specifically charged in the indictment" or that is the subject of the relevant trial.  *Gigante*, 166 F.3d at 82.  "In fact, the Second Circuit has held that it is not even necessary that the Government charge a conspiracy to take advantage of Rule 801(d)(2)(E)."  *United States v. Ulbricht*, 79 F. Supp. 3d 466, 483-84 (S.D.N.Y. 2015) (citing *United States v. DeVillio*, 983 F.2d 1185, 1193 (2d Cir. 1993)); *see also United States v. Maldonado-Rivera*, 922 F.2d 934, 962 (2d Cir. 1990) ("Though … Fed. R. Evid. 801(d)(2)(E) requires proof that both the declarant and the party against whom a declaration is offered be members of the same conspiracy, it does not require that the conspiracy be one charged in the indictment").

7

When determining whether the predicate conspiracy has been established, the district court is not bound by the rules of evidence, *see* Fed. R. Evid. 104(a), and "the district court may consider the hearsay statement itself" as evidence of "the existence of a conspiracy." *United States v. Padilla*, 203 F.3d 156, 161 (2d Cir. 2000) (citing *Bourjaily v. United States*, 483 U.S. 171, 181 (1987)).

To be in furtherance of a conspiracy, a statement "must in some way have been designed to promote or facilitate achievement of a goal of the ongoing conspiracy." *United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994). Under this standard, a co-conspirator statement is admissible if it "reasonably [can] be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy." *United States v. Tarantino*, 846 F.2d 1384, 1412 (D.C. Cir. 1988). Thus, statements are in furtherance of the conspiracy if they: (1) inform or provide an update as to the status or progress of the conspiracy, *see United States v. Desena*, 260 F.3d 150, 158 (2d Cir. 2001); (2) "prompt the listener . . . to respond in a way that promotes or facilitates the carrying out of a criminal activity," *Maldonado-Rivera*, 922 F.2d at 958; (3) "seek to induce a co-conspirator's assistance," *Desena*, 260 F.3d at 158 (internal quotations omitted); (4) "provide reassurance," *id.*; (5) "serve to foster trust and cohesiveness," *id.*; *United States v. Simmons*, 923 F.2d 934, 945 (2d Cir. 1991); (6) "facilitate and protect" the conspiratorial activities, *United States v. Diaz*, 176 F.3d 52, 87 (2d Cir. 1999); or (7) inform a co-conspirator of "the identity and activities of his coconspirators," *United States v. Rastelli*, 870 F.2d 822, 837 (2d Cir. 1989); *United States v. Rahme*, 813 F.2d 31, 36 (2d Cir. 1987). A narrative description of a past event is admissible as long as it serves "some current purpose in the conspiracy." *United States v.*

8

*Thai*, 29 F.3d at 813; *see also Desena*, 260 F.3d at 159; *Maldonado-Rivera*, 922 F.2d at 958;

*United States v. Flaharty*, 295 F.3d 182, 199-200 (2d Cir. 2002).

Indeed, "[s]tatements that describe past events are in furtherance of the conspiracy if they

are made . . . simply to keep coconspirators abreast of current developments and problems facing

the group." *United States v. Jefferson*, 215 F.3d 820, 824 (8th Cir. 2000) (internal quotations

omitted). For example, in *United States v. Lozano-Reyes*, the Second Circuit affirmed the trial

court's admission of co-conspirator statements relating to past events because the statements

served a current purpose in the conspiracy, namely, "to engender trust, to increase [the witness's]

familiarity with the conspiracy's *modus operandi*, and to outline future conspiratorial actions and

the anticipated profits." *United States v. Lozano-Reyes*, 101 F.3d 686 (2d Cir. June 1996).

Out-of-court statements are also admissible without resort to a hearsay exception where

they are offered for a purpose other than to "prove the truth of the matter asserted." Fed. R.

Evid. 801(c). Thus, "if the significance of an offered statement lies solely in the fact that it was

made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay."

*United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013). A statement is not hearsay if it is

"offered to show its effect on the listener." *Id.* Where one side of a conversation is admissible

for a non-hearsay purpose, the other half of the conversation typically will be admissible to

provide relevant context. *See, e.g.*, *United States v. Paulino,* 445 F.3d 211, 216-17 (2d Cir.

2006) ("It has long been the rule that so long as statements are not presented for the truth of the

matter asserted, but only to establish a context, the defendant's Sixth Amendment rights are not

transgressed." (internal quotation marks, brackets, and ellipses omitted)), *quoted in United States

v. Mouallem*, 566 F. App'x 82, 84 (2d Cir. 2014); *United States v. Sorrentino*, 72 F.3d 294, 298

(2d Cir. 1995), *overruled on other grounds by United States v. Abad*, 514 F.3d 271, 274 (2d Cir.

9

2008) (holding that recorded statements of a confidential informant were not hearsay when they were offered to render intelligible a defendant's recorded statements); *Spratt v. Verizon Commc'ns Inc.*, No. 11 Civ. 273 (AJN), 2014 U.S. Dist. LEXIS 136895, at *7 n.2 (S.D.N.Y. Sept. 17, 2014) ("'[O]ut-of-court statements are not hearsay if offered to show the context within which parties were acting, or to show a party's motive or intent for behavior.'" (quoting *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 420-21 (S.D.N.Y. 2011))); *United States v. Mayers*, 216 F. App'x 77, 81 (2d Cir. 2007) (holding that, even if one participant in recorded telephone conversations was not a member of the conspiracy, recordings "were admissible to render [the co-conspirators'] statements intelligible" (citing *Sorrentino*, 72 F.3d at 298)).

The Second Circuit has endorsed this analysis in the criminal context, upholding the admissibility of statements offered to provide context for a defendant's statements because such evidence is not offered to prove the truth of what is asserted.  *See United States v. Dupre*, 462 F.3d 131, 136-37 (2d Cir. 2006) ("Although the authors of the [email] messages did not testify at trial, the messages were not hearsay because they were not offered in evidence to prove the truth of the matters asserted.  The prosecution offered the [email] messages to provide context for defendants' messages sent in response to them . . . ."); *United States v. Stratton*, 779 F.2d 820, 830 (2d Cir. 1985) (recorded statements of cooperating witness "are admissible to provide the context for the declarant's admissions"); *see also United States v.  Dambruck*, 270 F. App'x 30, 34 (2d Cir. 2008) (finding certain statements were properly admitted by the district court at trial "because they were not used to prove the truth of the matter asserted but rather to provide context for [the defendant's] statements" (citation omitted).)   In the specific context of recorded conversations, the Second Circuit has found that "[s]o long as the informant's recorded statements are not presented for the truth of the matter asserted, but only to establish a context for the recorded statements of the

10

accused, the defendant's Sixth Amendment rights are not transgressed." *United States v. Barone*, 913 F.2d 46, 49 (2d Cir. 1990); *see also United States v. Kloszewski*, No. 17-4054, 2019 WL 181175, at *2 (2d Cir. Jan. 14, 2019) ("The admission of recordings that contain the voice of the defendant and a third party did not violate the Confrontation Clause because the third party's statements were used only to provide context, and not for the truth of what was said.").

C.   Discussion

The Government respectfully submits that the following categories of statements are admissible against the defendant under Rules 801(d)(2)(A), (D), or (E).  Illustrative examples of each category of statement are provided in the discussion below.

**1.      Communications Between Members of the Conspiracy**

At trial, the Government intends to introduce certain statements made between the co-defendants, or by the defendants' co-conspirators (including each other) that were "designed to promote or facilitate achievement of the goals of the conspiracy" and thus should be admitted under Rule 801(d)(2)(A) and (E).  *See Rivera*, 22 F.4d at 436.  For example, the Government expects to introduce text messages, intercepted calls, and emails reflecting conversations between and among Giannelli, Seth Fishman, and Jordan Fishman discussing the creation, development, manufacture, shipment, or sale of Seth Fishman's drugs, as well as conversations regarding the "trustworthiness" of potential clients.  Such conversations among co-conspirators, whether or not they are standing trial in this case, are all admissible as statements of a party opponent or co-conspirator statements admissible under Rules 801(d)(2)(A), (E). Statements among co-conspirators are admissible where made to inform or provide an update as to the status or progress of the conspiracy, *see Desena*, 260 F.3d at 158, to "seek to induce a co-conspirator's assistance," *United States v. Rodriguez*, 761 F. App'x 53, 57 (2d Cir.), *cert. granted, judgment vacated sub*

11

*nom. Minaya v. United States*, 140 S. Ct. 463 (2019), and *cert. denied*, 140 S. Ct. 473 (2019),

and *cert. denied sub nom. Hilario-Bello v. United States*, 140 S. Ct. 473 (2019) (quoting *Desena*,

260 F.3d at 158) (internal quotation marks omitted), or to otherwise inform a co-conspirator of

"the identity and activities of his co-conspirators," *Rastelli*, 870 F.2d at 837.

### 2.     Statements Made By, Fishman or Giannelli's Agents or Employees are Also Admissible

The statements of various agents and employees of any of the aforementioned entities,

owned and/or operated by Fishman or a co-conspirator, which reflect information or directions

conveyed to that employee or agent, are admissible as statements made within the scope of the

declarants' agency relationship with the defendants.  For example, the Government intends to

offer testimony regarding directions (themselves non-hearsay) given to employees of Twenty-

first century by an employee of Equestology to send shipments of drugs to Giannelli, in

Delaware, or regarding follow up questions and directions (again, non-hearsay) regarding the

preparation, and shipment, of drugs from Twenty-first Century to Equestology.  The offered

statements – that is, statements of the individuals employed by Fishman and co-conspirator

Jordan Fishman, conveying the fact that directions or questions were previously conveyed – are

admissible for their truth as statements intended to "facilitate and protect" conspiratorial

activities, *see Diaz*, 176 F.3d at 87, and to enable the conspirators to stay informed about the

"activities of [their] co-conspirators," *see Rastelli*, 870 F.2d at 837.  Accordingly, such

statements are admissible under Rule 801(d)(2)(E).  *See also United States v. Rioux*, 97 F.3d 658,

660 (2d Cir. 1996) (statements of declarants admissible against defendant where they were hired

by defendant, served at his pleasure, and received instruction from him).

### 3.    Statements Between Fishman or Giannelli and Third Parties or Customers Are Admissible

The Government intends to offer into evidence numerous intercepted conversations between Fishman or Giannelli, on the one hand, and a customer, on the other, seeking to place orders for drugs that the two defendants offered for sale.  As discussed, statements made by Fishman in the course of his conspiracy with Giannelli are admissible against Fishman himself (as statements of a party-opponent) and against Giannelli (as a co-conspirator statement); and the same is true with respect to statements by Giannelli as to Fishman. In particular, statements made by either of Fishman or Giannelli to potential clients, even those who did not join in the defendants' conspiracies by, for example, causing the distribution of misbranded and adulterated drugs, are likewise admissible in their entirety under Rule 801(d)(2)(E).[3] First, such statements by either Fishman or Giannelli were "designed to promote or facilitate achievement of the goals of the conspiracy." *See Rivera*, 22 F.4th at 436. Second, such statements were designed to "prompt the listener—who need not be a co-conspirator—to respond in a way that promotes or facilitates the carrying out of a criminal activity." *Maldonado-Rivera*, 922 F.2d at 958. Third, such statements were intended to induce the listener's assistance with respect to the conspiracy's goals." *United States v. Gupta*, 747 F.3d 111, 125 (2d Cir. 2014) (citing *In re Terrorist Bombings of U.S. Embassies in East Africa,* 552 F.3d at 139). And fourth, such statements are necessary to contextualize admissible statements of the defendants, co-conspirators, agents, or employees. *See Paulino,* 445 F.3d at 216-17 ("It has long been the rule that so long as statements are not presented for the truth of the matter asserted, but only to establish a context, the defendant's

---

[3] Such statements include, by way of example, Giannelli offering advice to a horse trainer regarding which of Seth Fishman's drugs to purchase, but ultimately concluding the call without closing the sale.

Sixth Amendment rights are not transgressed." (internal quotation marks, brackets, and ellipses omitted)).  For example, in conversations where Seth Fishman explained to a customer the nature of his business, the drugs he was willing to sell, and/or the untestability of his drugs, Fishman's statements are admissible against Giannelli for the reasons set forth in this paragraph, while the customer's responses and questions are admissible, not for their truth, but to provide necessary context to Fishman's otherwise admissible statements, including context as to Fishman's intent and state of mind in discussing his misbranded and adulterated drugs.

## II.  The Court Should Preclude Defendants From Offering Their Own Statements

While the Government may introduce a statement made by a defendant, defendants do not have a parallel ability to offer their own statements into evidence, without testifying and subjecting him- or herself to cross-examination.  "When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982); *see also United States v. Yousef*, 327 F.3d 56, 153 (2d Cir. 2003) (holding that defendant "could have testified to everything asserted in his statement, [but] he could not offer the document itself for the truth of the matter asserted"); *United States v. Rea*, 958 F.2d 1206, 1225 (2d Cir. 1992) (same); *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1987) ("[D]efense counsel wished to place [the defendant's] statement before the jury without subjecting [the defendant] to cross-examination, precisely what the hearsay rule forbids.").

Throughout the course of the charged conspiracy, the defendants have made self-serving, unfounded, and outright false statements regarding the scope, nature, or legality of their operation. These include, for example, the claim that Fishman acted as a legitimate veterinarian to animals owned by the clients purchasing his drugs, or that Giannelli was nothing more than an

14

uninformed delivery person for Fishman – both false. However, should either defendant attempt to offer his or her own statement, or the statement of a co-conspirator, for the truth of the matter asserted therein, such statement is inadmissible hearsay under Rule 801. *Marin*, 669 F.2d at 84. Thus, the defendants should be precluded from offering into evidence calls, text messages, emails, recordings, or other evidence reflecting their own statements, statements of co-conspirators, or statements between the co-conspirators and third parties or customers.

## III.   The Government Should be Permitted to Introduce Seth Fishman's Proffer Statements if the Door is Opened.

### A.   Background

As the Court is aware, Seth Fishman engaged in a series of proffer sessions with the Government early in the course of the Government's investigation. On November 8, 2019, November 12, 2019, and February 11, 2020, Seth Fishman and his attorney met with the Government for the purpose of proffering information.  Prior to the proffer sessions, the parties signed a proffer agreement, *see* Exhibit A,[4] that provided protections limiting the use of statements made by the defendant at those sessions, but also contained a waiver clause setting out circumstances in which those protections would be waived.  The waiver clause stated, in relevant part, that statements made by the defendant at the proffer session could be used "to rebut any evidence or arguments offered by or on behalf of [Seth Fishman] (including arguments made or issues raised *sua sponte* by the District Court) at any stage of the criminal prosecution (including bail, all phases of trial, and sentencing) in any prosecution brought against [Fishman]."  *See id.* Para. 3.

---

[4] Given the sensitivity of the information contained within Exhibits A through C, the Government respectfully requests that the exhibits be maintained under seal.

In the course of pretrial conferences and discussions with prior and current defense counsel, the Government has come to understand that Seth Fishman may, through counsel or otherwise, present arguments or testimony that is contradicted by certain proffered information. The Government understands that any motion for the admission of statements otherwise protected under the parties' proffer agreement is currently premature, but writes to set forth the legal principles pertaining to the defendant's "opening the door" to otherwise protected statements.[5]

B.  Applicable Law

Although statements made during plea discussions between a criminal defendant and the Government are ordinarily inadmissible at trial under Federal Rule of Evidence 410, the protections of Rule 410 are waivable. *See United States v. Mezzanatto*, 513 U.S. 196, 209-10 (1995). It is constitutionally permissible for a defendant to make a proffer statement pursuant to a written proffer agreement which, in part, waives the defendant's rights under Rule 410 to protection from the subsequent use of the statements in a future proceeding if the defendant's cooperation does not result in a plea. *See, e.g., id.* at 205, 210; *United States v. Barrow*, 400 F.3d 109, 116 (2d Cir. 2005); *United States v. Velez*, 354 F.3d 190, 196 (2d Cir. 2004).

In determining whether a defendant has triggered the type of waiver contained in Fishman's proffer agreement, the Second Circuit has instructed that a court:

...ask first whether there has been any evidence offered or elicited, or "factual assertion" made, by or on behalf of the defendant that would trigger the Rule 410

---

[5] Copies of Fishman's proffer-protected statements were previously provided to Giannelli in the course of pre-trial discovery in order to facilitate any severance motions the defendants may have raised under *Bruton* or otherwise. In the event Fishman "opens the door" to his own proffer statements, and to the extent that those statements are offered for their truth, the Government would offer those statements *only* as to Fishman, with an appropriate limiting instruction as to the use of that evidence against Giannelli.

waiver, and second, if so, whether the proffer statement "fairly rebut[s]" the fact asserted or evidence offered or elicited. If the defendant makes a factual assertion at trial that contradicts a statement made during the proffer session, the Government may then offer the earlier proffer statement to rebut the assertion being made at trial. Rebuttal is "necessarily a flexible concept," and not "limited to evidence that directly contradicts what it opposes; rather, rebuttal encompasses any evidence that the trial judge concludes fairly counters and casts doubt on the truthfulness of factual assertions advanced, whether directly or implicitly, by an adversary".

*United States v. Rosemond*, 841 F.3d 95, 107-108 (2d Cir. 2016) (quoting and citing *Barrow*, 400 F.3d at 117-21.

The Second Circuit has made clear that "[t]he mere fact that a defendant pleads not guilty and stands trial is not a factual assertion that triggers the proffer agreement waiver." *Barrow*, 400 F.3d at 118.  Defense counsel may "attempt to demonstrate why the facts put in evidence by the prosecution are insufficient," and "challenge[] the sufficiency of government proof on elements such as knowledge, intent, identity, etc.," without triggering the factual assertion requirement of waiver. *Id.* at 119.  "In other words, the proffer agreement does not bar a defendant from arguing that the Government has failed to meet its burden of proof." *Rosemond*, 841 F.3d at 108.

However, the Second Circuit has also clarified that waiver provisions apply to any factual assertions made by or on behalf of the defendant, "whether made 'directly or implicitly,' during counsel's opening argument or through cross-examination." *Id.*  In *Barrow*, the Second Circuit discussed the circumstances that would trigger a waiver under a proffer agreement with a waiver clause substantially similar to Fishman's. The proffer agreement at issue in *Barrow* stated that the Government could use the defendant's proffer statements "as substantive evidence to rebut any evidence offered or elicited, or factual assertions made, by or on behalf of [the defendant] at any stage of a criminal prosecution (including but not limited to detention hearing, trial or sentencing)." 400 F.3d at 113-14, 118. The Second Circuit found that such "triggering language

17

unambiguously expresses the parties' intent to create an expansive waiver," and rejected the defendant's argument that "only a specific or direct contradiction between his proffer statement and an assertion by counsel" triggers a waiver under such a clause. *See id.* at 117-18; *see also id.* at 123. To the contrary, the Second Circuit ruled that a defense opening or cross-examination may implicitly make a factual assertion contrary to a defendant's proffer statements and thus trigger a waiver. *See id.* at 118-20. With respect to implicit factual assertions, the Second Circuit stated:

> [A conclusion that there has been a factual assertion triggering a waiver] may not be reached so easily when counsel's arguments or questions assert facts implicitly rather than directly. For example, a cross-examination question challenging a witness's perception or recollection of an event does not necessarily imply that the event did not occur, only that the witness may not have seen or reported it accurately. On the other hand, a question accusing a witness of fabricating an event . . . does implicitly assert that no such meeting ever took place. Thus, when confronted with a government argument that a defense opening or cross-examination implicitly satisfies the factual assertion requirement for waiver, a district court may well have to consider carefully what fact, if any, has actually been implied to the jury before deciding whether proffer statements fairly rebut it.

*Id.* at 118-19.

Numerous courts in this Circuit have found waivers based on implied factual assertions. For example, in *United States v. Shaw*, a defendant was tried on charges that he (among other things) was involved in distributing marijuana from two apartments. *See* Brief for the United States of America at 42-48, *United States v. Shaw*, No. 08-CR-2978 (2d Cir. Apr. 22, 2009), 2009 WL 6870075. During the trial, the defendant's counsel implied that the defendant was merely an innocent bystander present at the apartments when law enforcement officers executed search warrants at the apartments by asserting in the opening statement: "You're going to hear about [this defendant's] arrests for small sales and for being in apartments with small amounts of

marijuana. But there will be no evidence, no credible evidence, tying him to large amounts of marijuana . . . ." *Id.* (emphasis omitted). The defendant's attorney also implied such a mere presence argument by asking, on cross-examination of officers involved in executing the search warrants, whether a confidential informant had provided a description that matched this defendant prior to the execution of the search warrants, and whether these officers had dusted the marijuana, scales and drug paraphernalia found in the apartments for fingerprints. *Id.* To rebut the impression created by these points, the district court allowed the Government to introduce the defendant's proffer statements that he had sold marijuana with others out of the two apartments. *Id.* The Second Circuit affirmed, stating: "Because defense counsel implied facts that contradicted Brown's proffer statements, the District Court did not err in admitting the proffer statements." 354 Fed. Appx. 439, 443 (2d Cir. Sept. 16, 2009).

The Second Circuit has also provided guidance on the scope of a waiver triggered by an express or implied factual assertion. In *Barrow*, for instance, the Second Circuit explained that the waiver provision did not limit the Government to offering only proffer statements that directly contradicted defense counsel's factual assertions. 400 F.3d at 121. Rather, the Second Circuit held, "rebuttal encompasses any evidence that the trial judge concludes fairly counters and casts doubt on the truthfulness of factual assertions advanced, whether directly or implicitly, by an adversary." *Id.*; *see also id.* at 123 ("In sum, we reject [the defendant's] argument that his proffer agreement waiver applied only to statements that directly contradicted his attorney's factual assertions in his opening statement and cross-examination. The waiver language is fairly construed to apply to any proffer statements that could fairly rebut those factual assertions, and the district court did not abuse its discretion in admitting proffer statements relating to crack dealing for this purpose."); *see also United States v. Bryant*, 520 Fed. App'x 11, 13 (2d Cir. Apr.

19

3, 2013) (affirming district court's admission of defendant's proffer statements after defendant opened door given the Court's "broad definition of rebuttal evidence" in *Barrow*).

Additionally, the Second Circuit has ruled that in cases such as this, where the proffer agreement's waiver clause applies to "any stage" of a criminal prosecution, the Government may admit proffer statements in its case-in-chief if the defendant does anything to trigger a waiver during the Government's case-in-chief. *Barrow*, 400 F.3d at 117 n.7. As explained by the Second Circuit:

> As the Seventh Circuit observed in *United States v. Krilich*, a defendant can open the door to introduction of proffer statements as easily on the government's case-in-chief—for example, through cross-examination of a prosecution witness—as on his own case. In the former circumstance, and where the defendant rests without presenting direct evidence, the only opportunity the government will have to rebut the evidence elicited on cross-examination will be on its direct case. Thus, the critical issues for purposes of determining admissibility should be whether defendant's waiver does explicitly apply, as in this case, to "any stage" of his prosecution, and whether he has, in fact, triggered that waiver. If these questions are fairly answered in the affirmative, and if the evidence is otherwise admissible, the question of when in the course of trial the proffer statements should be presented to the jury is a matter sensibly left to the sound discretion of the trial judge.

*Id.* (citations omitted).

C.  Discussion

The Government acknowledges that this motion is not yet ripe, as neither Seth Fishman nor his counsel have made any affirmative factual assertions, express or implied.  Nonetheless, and out of an abundance of caution given conversations with prior and current counsel to date, the Government writes to alert the Court that it intends to move for admission of Fishman's proffer statements in the event counsel places them at issue at trial, or in the event that Fishman testifies to facts that open the door to his proffered statements.

20

**IV.  The Court Should Preclude Defense Counsel From Offering Evidence or Arguments Speculating As To Why Other Individuals or Entities Engaged in Activities Similar to the Charged Conduct Were Not the Subject of Criminal Prosecution**

The Court should preclude as irrelevant and prejudicial any argument at trial regarding why entities or individuals other than the defendants have not been (or have not yet been) investigated, warned, or otherwise criminally charged.  As a standard jury instruction in this District makes clear, inviting the jury to speculate as to why other entities and individuals were not charged or are not on trial is improper.  *See, e.g.*, *United States v. Bodouva*, 16 Cr. 214 (VEC), Jury Charge Tr. at 951-52 ("Some of the people who may have been involved in the events at issue in this trial are not on trial.  You may not draw any inference, favorable or unfavorable, towards the government or the defendant from the fact that persons other than the defendant were not named as defendants in the indictment, nor may you speculate the reason why other persons are not on trial.  Those matters are wholly outside your concern and have no bearing on your function as jurors.").  This caution is particularly salient in this case, where multiple co-conspirators (and others) have been criminally charged, but have not been included in this trial group, and where counsel for certain of the defendants in this case have taken the opportunity to directly contrast their own client's charged conduct with the alleged conduct of other uncharged individuals. The Court should therefore preclude any such improper argument. To the extent the defendants seek to admit extrinsic evidence supporting such argument, the Court ought likewise to preclude such evidence under Rule 403 as prejudicial, irrelevant, and confusing to the jury.  The defendants' actions—not those of any other entity or individual—are at issue here. Rank speculation as to the consequences imposed on others (or lack thereof) is merely a sideshow that risks misleading and confusing the jury.

21

V.   **Cross-Examination of FBI and FDA Agents and Employees Should be Limited to their Credibility and the Topics to which they Testify on Direct**

Absent reaching certain stipulations with the defendant, the Government anticipates having to call multiple agents or employees from the FBI or FDA to testify as custodial witnesses regarding the seizure of evidence from Seth Fishman or from premises associated with Seth Fishman, Giannelli, Jordan Fishman, Christopher Oakes, or others.  The Government moves to limit cross-examination of these witnesses to the scope of their direct testimony and to those matters the Court finds bear on the credibility of these witnesses, consistent with Rule 611(b).

Under Rule 611(b), "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness."  *See also United States v. Rivera*, 971 F.2d 876, 886 (2d Cir. 1992) ("[C]ross-examination should be limited to the subject matter of the direct examination and matter affecting the credibility *of the witness*." (quoting Fed. R. Evid. 611(b) (emphasis in *Rivera*)).  Thus, when an agent testifies about certain discrete matters, district courts may properly limit cross-examination to those same matters and subjects bearing directly on the credibility of that witness's testimony.  *See United States v. Koskerides*, 877 F.2d 1129, 1136 (2d Cir. 1989) (affirming trial court's limitation of cross-examination of case agent to those subjects on which the agent testified); *United States v. McLaughlin*, 957 F.2d 12, 18 (1st Cir. 1992) ("[A] party has no right, unless the court in the exercise of its discretion allows, to cross-examine a witness beyond the subject matter of his direct examination and beyond matters affecting credibility.").

The Government moves on this issue solely to avoid the delay that often accompanies common cross-examination subjects, such as the overall conduct of the investigation, the law enforcement techniques utilized (or not utilized), and hearsay statements heard by the

government witnesses—all of which the Government expects will be outside the anticipated

scope of these witnesses' direct examination.  For example, the Government respectfully submits

that a witness who testifies on direct solely regarding the steps taken to seize, seal, label, and

store physical evidence seized from a premises search should not be subject to cross-examination

regarding the scope of the Government's overall investigation or investigative steps taken apart

from the limited instances in which the particular witness was involved.  Such inquiries are likely

to result in time-consuming sidebars concerning, among other things, the proper scope of cross-

examination, the relevance and probative value of the attempted cross-examination topics, and

the form of the questions defense counsel wishes to pose.

## VI.  The Defendants Should Be Precluded From Invoking an Advice of Counsel Defense

At different points in the course of the charged conspiracy, Seth Fishman and/or Lisa

Giannelli have been represented by counsel for various proceedings, including when the

defendants were under investigation by the State of Delaware Division of Professional

Regulation in or about 2011, and when Fishman initially proffered with the U.S. Attorney's

Office for the Eastern District of New York in or about October 2010 in connection with that

office's prosecution of David Brooks.[6]  To date, neither defendant has notified the Government

that they intend at trial to rely on the defense of advice of counsel, nor have they made

disclosures of any documents, records, or other evidence reflecting any such defense. Given that

---

[6] Fishman initially proffered with the U.S. Attorney's Office for the Eastern District of New York ("EDNY") on or about October 13, 2010, pursuant to a proffer agreement, and with the participation of Fishman's counsel.  In subsequent meetings with the prosecutors in the EDNY, Fishman voluntarily provided information without the benefit of a proffer agreement, and without the participation of his attorney. Eventually, Fishman testified (outside the presence of a jury) at a hearing regarding the admissibility of certain evidence at Brooks' trial, and did so without a grant of immunity.

no notification or disclosure of such a defense has been provided, the Government writes to preclude the defendants from raising an advice of counsel defense at trial.

The Second Circuit has long held that "the attorney-client privilege cannot at once be used as a shield and a sword." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (citations omitted). As a result, a "defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes." *Id.* As the Second Circuit has recognized, "the situations in which the advice-of-counsel defense may be employed are severely limited." *Lurie v. Wittner*, 228 F.3d 113, 134 (2d Cir. 2000). And even where that defense is theoretically available, a defendant can only assert the defense if "there are sufficient facts in the record to support the defense." *United States v. Quinones*, 417 F. App'x 65, 67 (2d Cir. 2011) (citations omitted). A defendant must show that he "(1) honestly and in good faith sought the advice of counsel; (2) fully and honestly laid all the facts before his counsel; and (3) in good faith and honestly followed counsel's advice, believing it to be correct and intending that his acts be lawful." *United States v. Colasuomo*, 697 F.3d 164, 181 (2d Cir. 2012) (quotation marks omitted). If a defendant fails to satisfy these factual predicates, the defendant cannot rely on that defense. *Id.*; *see also United States v. Evangelista*, 122 F.3d 112, 117 (2d Cir. 1997). It is also well-settled that a defendant's assertion of an advice of counsel defense "in fairness requires examination of protected communications." *Bilzerian*, 926 F.2d at 1292. A "defendant who asserts an advice-of- counsel defense . . . is thereby deemed to have waived his privilege with respect to the advice that he received." *In re Grand Jury Proceedings*, 219 F.3d 175, 182–83 (2d Cir. 2000) (citations omitted).

As a result, defendants can only raise a defense of advice of counsel if they notify the

24

Government at a proper time before trial. *See, e.g.*, *United States v. Scali*, No. 16-CR-466 (NSR), 2018 WL 461441, at *8 (S.D.N.Y. Jan. 18, 2018), *aff'd*, 820 F. App'x 23 (2d Cir. 2020) (Government's request for notice was moot, because defendant had already provided notice of that defense, but explaining that a defendant must provide such notice); *see also United States v. Hatfield*, No. 06-CR-0550 (JS), 2010 WL 183522, at *13 (E.D.N.Y. Jan. 8, 2010) (ordering disclosure by defendant if they intended to rely on such a defense); *cf. United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *3 (S.D.N.Y. Oct. 30, 2017) (assuming that defendant had complied with representation that he would notify the Government at an appropriate time before trial. Defendants must also provide to the Government "pertinent disclosures during discovery." *Scali*, 2018 WL 461441, at *8. Such disclosures "include not only those documents which support the defense, but also all documents (including attorney-client and attorney work product documents) that might impeach or undermine such a defense." *Id.* (citing *Hatfield*, 2010 WL 183522, at *13). "Failure to provide this discovery will preclude reliance on an advice-of-counsel defense at trial." *United States v. Schulte*, No. S2 17 CR. 548 (PAC), 2020 WL 133620, at *6 (S.D.N.Y. Jan. 13, 2020); *see also United States v. Wells Fargo Bank N.A.*, No. 12-CV-7527 JMF, 2015 WL 3999074, at *1 (S.D.N.Y. June 30, 2015) ("failure to [make a full disclosure] constitutes a waiver of that defense.").

Given the complexity of the issues raised by asserting an advice of counsel defense, including the time necessary for the Government to review any responsive productions and litigate the scope of the privilege, the time for alerting the Government to such a defense has long passed. Consequently, the Court should preclude entirely any evidence or argument seeking to establish an advice of counsel defense.

**VII.  The Defendants Should Be Precluded From Offering A Defense of Public Authority or Entrapment by Estoppel**

Just as the defendants ought to be precluded from introducing an advice of counsel defense, so, too, should they be precluded under Rule 403 and Federal Rule of Criminal Procedure 12.3 from offering as a defense that the defendants believed their conduct was lawful or otherwise sanctioned by the Government, as such a defense would be factually unfounded, misleading, and prejudicial.  At various points during the course of their conspiracy, Seth Fishman and Lisa Giannelli were in contact with, or under investigation by, state authorities in Delaware, but were not previously criminally charged.  Likewise, Seth Fishman discussed with federal prosecutors and the FBI the nature of his business in preparation for the prosecution of David Brooks, a securities fraud trial in which Fishman was a potential witness (as noted above, Fishman testified outside of the presence of the jury, but was not ultimately called as a trial witness).  At no point were either Seth Fishman or Lisa Giannelli affirmatively advised by a federal agent or prosecutor that their offense conduct was legal.  Thus, this Court ought to preclude as irrelevant, prejudicial, and misleading any argument or testimony that the defendants believed their conduct was sanctioned because they were never criminally charged in connection with those prior investigations.

Rule 12.3 requires a defendant to notify the Government in writing if he or she "intends to assert a defense of actual or believed exercise of public authority on behalf of a law enforcement agency or federal intelligence agency at the time of the alleged offense."  Fed. R. Crim. P. 12.3.  The "so-called 'public authority' defense . . . divides into two closely-related, but slightly different, forms." *United States v. Giffen*, 473 F.3d 30, 39 (2d Cir. 2006). One, the actual public authority defense, "exists where a defendant has in fact been authorized by the

26

government to engage in what would otherwise be illegal activity." *Id.* The second form of the

defense, usually called entrapment by estoppel, is also an affirmative defense, whereby a

defendant is permitted to argue that he "commit [ed] forbidden acts in the mistaken but

reasonable, good faith belief that he has in fact been authorized to do so." *United States v. Gil*,

297 F.3d 93, 107 (2d Cir. 2002) (quoting *United States v. Abcasis*, 45 F.3d 39, 43 (2d Cir. 1995)

(internal quotation marks omitted)).

Consequently, a defendant seeking to establish entrapment by estoppel " 'must put forth

an affirmative representation by a government official that his conduct was or would be

legal.' " *Giffen*, 473 F.3d at 43 n.13 (quoting *United States v. Pardue*, 385 F.3d 101, 108-09 (1st

Cir. 2004)); *see also* Sand, *Modern Federal Jury Instructions*, Instr. 8-7.1 ("The

misrepresentation must have been a clear statement directly by the official to the defendant that

the conduct defendant is charged with here was in fact legal.").[7]

---

[7] The Second Circuit has identified "negation of intent" as a third variation on the public
authority defense, albeit one that it has never recognized. *Giffen*, 473 F.3d at 43 (noting that the
theory had "been expressly recognized only in the Eleventh Circuit"); *see also United States v.
Mergen*, 764 F.3d 199, 205 (2d Cir. 2014); *United States v. Alvarado*, 808 F.3d 474, 487 (11th
Cir. 2015) ("[I]n recognizing the availability of an innocent intent theory of defense for a
defendant who has failed to meet the standard for a public authority affirmative defense, we
acknowledge that our Circuit may be the only circuit to explicitly allow an innocent
intent defense in this context."). As the Circuit has explained, this doctrine "is not an
affirmative defense," but instead an effort by a defendant "to rebut the government's proof of the
intent element of a crime by showing that the defendant had a good-faith belief that he was
acting with government authorization." *Giffen*, 473 F.3d at 43. In other words, negation of intent
contemplates a situation in which a defendant "honestly, albeit mistakenly, believed he was
committing the charged crimes in cooperation with the government." *Id.* The *Giffen* Court
expressed "great difficulty" with the negation-of-intent theory, observing that such a doctrine
would "swallow the actual public authority and entrapment-by-estoppel defenses." *Id.* As the
Second Circuit explained, "[s]uch an unwarranted extension of the good faith defense would
grant any criminal *carte blanche* to violate the law should he subjectively decide that he serves
the government's interests thereby," rendering "[l]awbreakers . . . their own judges and
juries." *Id.* (quoting *United States v. Wilson*, 721 F.2d 967, 975 (4th Cir. 1983)); *see also United
States v. Edwards*, 101 F.3d 17 (2d Cir. 1996) (per curiam) (upholding district court's denial

Acceptance of the entrapment by estoppel defense must be exercised with "great caution" and " 'great reluctance,' " and only when the use of the doctrine " 'does not interfere with underlying government policies or unduly undermine the correct enforcement of a particular law or regulation.' " *United States v. Corso*, 20 F.3d 521, 528 (2d Cir. 1994) (quoting *United States v. Browning*, 630 F.2d 694, 702 (10th Cir. 1980)).  Entrapment by estoppel is "an affirmative defense," for which the burden of proof "is on the defendant." *United States v. Sash*, 444 F. Supp. 2d 224, 229, 230 (S.D.N.Y. 2006) (citing *Abcasis*, 45 F.3d at 43).

In short, in order to present a colorable defense of actual or perceived authority, the defendants must demonstrate reliance on the affirmative advice or representation by a government official responsible for interpreting, administering, or enforcing the law at issue.[8]

---

of defense request for a lengthy adjournment to pursue a particular defense theory, "because the defense was rooted in the erroneous assumption that good motive for committing a crime is inconsistent with criminal intent") (internal quotation marks omitted). Notwithstanding these serious concerns, the Second Circuit has "assume[d] for purposes of argument . . . that, at least in some circumstances, a defendant may offer evidence that he lacked the intent essential to the offense charged because of his good-faith belief that he was acting on behalf of the government." *Giffen*, 473 F.3d at 43. Even then, however, "[t]he relevance, and hence admissibility, of such a belief would depend . . . on the nature of the intent element of the charged crime," and, in particular, on "whether a defendant's belief that his actions were authorized by the government would negate that intent." *Id.* at 43-44. For the same reasons as those discussed above, this defense likewise does not apply to either Fishman or Giannelli.

[8] Notably, the defense is not applicable where state or local authorities provide incorrect advice, which is followed thereafter by a federal prosecution. *See United States v. Ormsby*, 252 F.3d 844, 851 (6th Cir. 2001); *United States v. Funches*, 135 F.3d 1405, 1407 (11th Cir. 1998); *United States v. Rector*, 111 F.3d 503, 505-07 (7th Cir. 1997); *United States v. Spires*, 79 F.3d 464, 466-67 (5th Cir. 1996); *United States v. Caron*, 64 F.3d 713, 715-17 (1st Cir. 1995); *United States v. Collins*, 61 F.3d 1379, 1385 (9th Cir. 1995); *United States v. Etheridge*, 932 F.2d 318, 320-21 (4th Cir. 1991); *see also United States v. Gutierrez-Gonzalez*, 184 F.3d 1160, 1167 (10th Cir. 1999) ("[T]he defense of entrapment by estoppel requires that the 'government agent' be a government official or agency responsible for interpreting, administering, or enforcing the law defining the offense."); *United States v. Stewart*, 185 F.3d 112, 125 n.5 (3d Cir. 1999) ("[W]e are doubtful that a defendant can claim an entrapment by estoppel defense when, as [the defendant] contends was the case here, the government official is a state official who approves of the

The defendants have produced no evidence that such advice was given, nor is there any support for this defense in the record. Consequently, in light of the tenuousness of either defendant's claim to the entrapment-by-estoppel defense, and the doctrine's longstanding emphasis on clear assurances from a government actor, which were not provided, the defendants ought to be precluded from raising any evidence or argument invoking this defense at trial.

## VIII. Evidence or Argument Concerning the Defendants' Health, Addictions, Family Background, Age, Education, or Any Other Personal Factor Unconnected to Guilt Should Be Precluded, As Should Discussions of Punishment

The Court should preclude the defendants from introducing or making arguments concerning their health, including Seth Fishman's alleged cancer diagnosis, their family backgrounds, ages, education, or any other similar personal factors.  These facts and arguments are irrelevant to and do not bear upon the merits of the case, that is, whether the defendants engaged in a conspiracy to distribute adulterated and misbranded drugs intended to "dope" racehorses with the intent to defraud or mislead.  *See, e.g.*, *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that defendant had son with cerebral palsy); *United States v. Battaglia*, No. S9 05 Cr. 774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of Defendant's family and personal status" as not "relevant

---

criminal conduct on state law grounds and the defendant is accused of violating federal law."); *United States v. Achter*, 52 F.3d 753, 755 (8th Cir. 1995) (suggesting that defendants cannot rely on representations by local officials regarding federal law). This is because state and local officials cannot " 'bind the federal government to an erroneous interpretation of federal law.' " *Gil*, 297 F.3d at 107 (quoting *Ormsby*, 252 F.3d at 851).  Moreover, as the Fourth Circuit and other courts have recognized, the rationale for the doctrine is not implicated where "the government that advises and the government that prosecutes are not the same." *United States v. Etheridge*, 932 F.2d at 321 (citation and internal quotation marks omitted). In this circumstance, "application of the defense would penalize the wrong government— the government that prosecuted appellant rather than the government that mistakenly and misleadingly interpreted the law." *Id.*

to the issue of whether Defendant committed the crimes charged"); *United States v. Crown*, No. 99 Cr. 1044 (AGS), 2000 WL709003, at *3 (S.D.N.Y. May 31, 2000) (precluding evidence of defendant's medical condition as not relevant to the crime of illegal reentry and in any event outweighed by its "potential prejudicial effect on the jury").  As none of these facts or arguments would bear upon the elements of the charged offenses, the defendants should be precluded from raising these issues under Federal Rules of Evidence 401 and 402.

Even if these facts and arguments had any probative value, they would be substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury.  The presentation of evidence of a defendant's personal history and characteristics could improperly influence the jury by appealing to their sympathies, or confuse and mislead the jury as to the issues that need to be decided in this case.  Fed. R. Evid. 403, Advisory Committee's Note (noting that evidence is excludable if it has "an undue tendency to suggest decision on an improper basis").  Absent a legal basis to introduce evidence of or make arguments concerning the defendants' personal circumstances, the defendants should be precluded from doing so, and from mentioning such subjects in their opening statements.  *See United States v. Harris*, 491 F.3d 440, 447 (D.C. Cir. 2007) (affirming preclusion of evidence designed "mainly to cast [the defendant] in the sympathetic light of a dedicated family man").

The defendants similarly should be precluded from offering evidence or argument concerning the punishment or consequences each faces if convicted.  The jury "should be admonished to 'reach its verdict without regard to what sentence might be imposed.'"  *Shannon v. United States*, 512 U.S. 573, 579 (1994) (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)).  This is so for good reason: argument concerning punishment "invites [jurors] to ponder

matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion."  *Id.*

Accordingly, the Court should preclude any evidence regarding the defendants' personal circumstances or the punishment each faces if convicted.

## IX.   The Court Should Admit As Non-Hearsay Records From the Delaware State Division of Professional Regulation Investigation Into Fishman and Giannelli

Beginning in or about January 2011, during the course of the charged conspiracy, Seth Fishman and Lisa Giannelli were the subject of an investigation by the State of Delaware Division of Professional Regulation on the basis of a complaint (the "Complaint") lodged by a veterinarian who claimed that a racehorse had been injected with one of Seth Fishman's drugs, and had subsequently died.  *See* Exhibits B and C.  The Court should admit: (1) the Complaint which was provided to Fishman and Giannelli in the course of that investigation; (2) recorded interviews of Fishman and Giannelli in connection with that investigation; and (3) the defendants' written response to the Complaint, made through their shared counsel and adopted by each of the defendants through notarized attestations.

First, with respect to the Complaint itself, it is not offered for the truth of the matters asserted in that document, but to establish Fishman and Giannelli's knowledge of the allegations in the Complaint, their intent to defraud and mislead that particular state drug regulator, their knowledge (or conscious avoidance of confirmation) of the Food, Drug, and Cosmetic Act's ("FDCA") application to the drugs peddled through their efforts, and to contextualize the false statements made by Fishman and Giannelli to the investigators both in their recorded interviews and their statement.  The Complaint stated the following, among other things: (1) that the individual who had administered the drug to the deceased horse "bought [the drug] from Lisa M.

Ranger who sells drugs for Seth I. Fishman"; (2) the complainant was "suspicious this veterinarian [Fishman] does not have a client patient relationship"; (3) "Lisa M Ranger is not a licensed veterinarian and she is driving around this state selling medications, needles, syringes and prescription drugs without a license and no professional training in regards to the medications she is dispensing"; (4) Fishman "is not physically examining these animals and is in the medications sales situation strictly for profit"; and (5) Giannelli is "dispensing medications that are not approved in the US which is also a FDA and potentially a DEA violation." *See* Exhibit B.

The Government does not intend to offer these statements from the Complaint for their truth.  Rather, the Complaint—to which Fishman and Giannelli responded both orally and in writing—is offered for the non-hearsay purpose of demonstrating that both defendants, *at least* as of the time of the Complaint, were on notice regarding various facts that bear upon their state of mind when engaging in the offense conduct: that veterinarians must establish a valid veterinarian-client-patient relationship ("VCPR") before dispensing drugs; that non-veterinarians may not dispense drugs; that it is problematic to distribute non-FDA-approved drugs, particularly in the absence of any VCPR; that the foregoing could run afoul of federal law; and that a state regulator concerned with the dispensing of drugs was a particular object of Fishman and Giannelli's efforts to defraud and mislead. Separately, admission of the Complaint is further offered for the non-hearsay purpose of contextualizing the defendants' subsequent false responses.

Second, the Government intends to offer at trial portions of a recorded interview between a state investigator and Fishman and Giannelli in connection with Delaware's investigation into the Complaint, including Giannelli's false statements that she performed solely "administrative"

tasks as a "delivery person" for Seth Fishman, and Giannelli's further false statement, when asked if a bottle she had sold was labeled with (or accompanied by) a prescription: "I'm just a delivery person so whatever he [Seth Fishman] tells me to deliver, I deliver. I don't look at it. I am like a UPS driver, I just drop it off." [9] The Government intends to offer portions of that recorded statement which are admissible, either, as admissions of the defendants or a co-conspirator made to "facilitate achievement of a goal of the ongoing conspiracy," *Rivera*, 22 F.3d at 436, as discussed above, or to contextualize such admissible statements. Further, insofar as Fishman and Giannelli, during the course of the interview, made false statements regarding facets of their drug distribution scheme, such as Giannelli's claim that she solely delivered drugs prescribed by Seth Fishman, that audio would be admissible as they are not offered for their truth (because they are in fact false), but instead to demonstrate the defendants' consciousness of guilt, in deliberately misleading the investigator as to the scope of their activities.

Third, the defendants, through their attorney, submitted a written response to the Complaint. *See* Exhibit C at 2-5. The response was accompanied by notarized statements from both Fishman and Giannelli declaring the accuracy of the document submitted. *See id.* at 6-7. As with the false statements in the defendants' recordings, the Government intends to offer portions of the letter-response not for its truth, but as a demonstration of the defendants' consciousness of guilt on the basis of false statements contained within that response. For example, the letter-response stated that Giannelli "deliver[ed] products and medications prescribed by Dr. Fishman and act[ed] as receptionist and secretary to Dr. Fishman," *id.* at 9, and, likewise, that she "does

---

[9] The Government anticipates testimony and documentary evidence establishing that Giannelli ordered and stockpiled drugs that she sold at her discretion and *not* at Fishman's direction, and that she discussed various drugs with customers who were not acquainted with Fishman.

33

not sell drugs for Dr. Fishman . . . [she] delivers supplies for Dr. Fishman," *id.* at 10.  The letter-response further stated that "Dr. Fishman physically examines *all animals he treats*."  *Id.* (emphasis added).  Such statements were false, and are offered for that precise reason.  Alternatively, counsel's letter-response is admissible as a non-hearsay statement made by the opposing parties in a "representative capacity," Fed. R. Evid. 801(d)(2)(A), or a statement "made by a person whom [Fishman and Giannelli] authorized to make a statement on the subject," Fed. R. Evid. 801(d)(2)(C).  By any measure, the statement is admissible.

## X.   The Court Should Admit Fishman's Statements to the Federal Bureau of Investigation and the U.S. Attorney's Office for the Eastern District of New York in connection with the Prosecution of David Brooks

As stated above, in connection with the prosecution of David Brooks, Fishman initially proffered with the U.S. Attorney's Office for the Eastern District of New York between in or about October through in or about December 2010 in connection with that office's prosecution of David Brooks.  As stated above, on multiple occasions, Fishman voluntarily, and without limitations on use, provided information to the individuals who participated in that meeting.  In the course of those interviews, Fishman explained his relationship to Brooks (a racehorse owner), which included Brooks' efforts to obtain potent PEDs, including human growth hormone, through Fishman for use on Brooks' horses. Fishman admitted that, at least as of 2004, he agreed to supply human growth hormone and other drugs to Brooks for the purpose of doping Brooks' horses. Moreover, Fishman explained to his interviewers that Brooks' horses did not test positive for those drugs *not* because the drugs were never administered or ineffective, but because relevant testing authorities were not testing for the correct substance. This admission is consistent with Fishman's overarching criminal strategy as charged in the Indictment: testability of his drugs would make those drugs unsaleable.  Fishman further admitted to knowing at the

34

time of his work with Brooks that the provision of such drugs violated the rules of "the Racing Commission."

As discussed above, these admissions by Fishman, made in the course of the conspiracy, are admissible as non-hearsay statements of a party-opponent, Fed. R. Evid. 801(d)(2)(A), and are direct and relevant evidence of the defendant's state of mind during the course of the charged conspiracy.[10]

## XI.  Fishman's Sales of Misbranded and Adulterated Drugs to Clients Located Abroad and Clients Engaged in Activities Other than Racing are Direct Evidence of the Charged Offenses

In the course of his roughly twenty-year criminal operation at Equestology, Fishman primarily cultivated clients engaged in competitive horse racing. However, Fishman's products were useful for cheating in other sports, including non-racing equestrian events, and were also distributed to clients located outside of the United States. Each of these aspects of Fishman's operation – non-racing sales and foreign sales – were part and parcel of Fishman's overall illegal drug business and facts relating to these aspects are admissible as direct evidence of the charged offenses.

Fishman's sales to non-racing clients were, nevertheless, sales of the same misbranded and adulterated drugs that he sold to racing clients – the drugs were misbranded and/or adulterated in precisely the same ways because they were precisely the same drugs. Moreover,

---

[10] They are, moreover, admissible under the terms of Rule 404(b) for several permissible purposes. Fishman's statements reflect his intent in creating his "untestable" drugs; reflect his long-term preparation and planning for the business operations of Equestology that continued even after his arrest in this case; and his knowledge of the testing regimes of various racing regulators (such that Fishman's products would successfully evade detection by those regulators). The Court need not rule on the admissibility of the statements under Rule 404(b), however, as the statements were direct admissions relating to the early days of Fishman's long-running criminal enterprise.

the intended effects and the importance of non-testability remained the cornerstone of Fishman's overall business even when dealing with these non-racing clients. The Government anticipates, for example, introducing evidence of Equestology sales to a veterinarian engaged in training horses for Olympic equestrian events. Those sales were, nevertheless, intended to dope those horses using Fishman's same suite of purportedly untestable, misbranded and adulterated drugs. Those sales involved drugs manufactured in unregistered facilities, the sale of unapproved new animal drugs, and the sale of prescription drugs without a valid prescription or any VCPR. Indeed, the fact that Fishman was selling *to another veterinarian* demonstrates that his sales were not made by Fishman *as* a veterinarian, but merely as a drug dealer, as was the case in all of his Equestology sales.

At various times in pretrial litigation, Fishman has suggested that his sales of his drugs to foreign clients was beyond the scope of the FDCA or otherwise irrelevant to the charged offenses; Fishman is incorrect. As with non-racing clients, Fishman also peddled his drugs to clients located abroad, occasionally for use in doping animals other than horses, but always for use in purportedly undetectable performance enhancement of animal-athletes. In intercepted calls with clients and potential clients located abroad, Fishman touted his drugs – the same drugs sold to domestic horse trainers – as untestable doping substances. The Government anticipates that Fishman and Giannelli may attempt to excuse at least portions of their activities by reference to the so-called "export exemption" set forth in Section 801(e) of the FDCA. However, even were Fishman or Giannelli to attempt the affirmative defense available for certain exporters under the FDCA; even were they to claim that their drugs were sold to foreign clients "accord[ing] to the

specification of the foreign purchaser," 21 U.S.C. § 381(e)(1)(A);[11] and even were they to claim

that the drugs sold to foreign purchasers were exclusively sold to foreign purchasers, as required

by the export exemption, 21 U.S.C. § 381(e)(1)(D) (applying "export exemption" to drugs that

are "not sold or offered for sale in domestic commerce"),[12] these foreign sales would still

directly demonstrate multiple elements of the charged offenses.

Fishman and Giannelli's sales of these products, and in particular Fishman's description

of his products to foreign clients, demonstrates that his pills, pastes, and injectable substances

were "drugs," as defined by the FDCA. *See* 21 U.S.C. § 321(g) (defining "drug" to include

"articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in

man or other animals; and . . . articles (other than food) intended to affect the structure or any

function of the body of man or other animals."). Conversations with foreign purchasers by

Fishman, in particular, regarding the effect and testability of his drugs further demonstrates both

the actual nature of the Fishman suite of products (*i.e.*, that they were drugs intended as

untestable doping agents) and Fishman's intent as to their use regardless of the jurisdiction in

which the drug was administered. By way of example, on or about March 31, 2019, on a call

with a foreign potential client intercepted on Fishman's cellular telephone, Fishman explained, in

summary, his overall business at Equestology:

> I design programs for people. So if you're somebody who's got a bunch of
> endurance horses and you know what you are doing and that's why I technically
> only work with trainers that have a certain amount of horses or more cause it
> would make sense to do it. I design programs for people. I mostly work in

---

[11] Drugs sold by Equestology to foreign purchasers were simply the same drugs that Fishman had created for his business, generally, and without regard to any such specifications made by the foreign purchaser.

[12] Many of the drugs sold by Equestology were sold both domestically and to certain foreign purchasers; yet another reason by this so-called exemption is inapplicable to Seth Fishman.

regenerative peptides and I work in things that are not commercially available. Every now and then people will ask me to make products because they want to go sell them to people who really don't know what's going on. Mostly camel guys that are in the desert. I don't have to tell you how it is right. . . . But I can meet with you [in Dubai]. You can explain to me your needs and wants and I can tell you how there's things that I made for other people that are not exclusive to them if you want your own exclusive stuff I'll tell you how we go about doing it. The reason I say that certain people want exclusivity is because obviously if these horses are being tested and they have something that somebody else has and that person is irresponsible then it becomes a problem for them.

This call, though contemplating a sale abroad, refers to drugs sold by Fishman generally and, moreover, reflects Fishman's overall intent in his drug design – to avoid testability while increasing performance. In short, because Fishman sold and offered for sale the same drugs both domestically and abroad—all intended for use in animals—evidence pertaining to one necessarily reveals aspects as to his sale of the other. Because of the commonalities between the sales to his various clients, evidence of Fishman's drug sales is equally relevant and without undue prejudice regardless of whether a particular sale was directed to a foreign client, a non-racing client, or a domestic horse racing client. Evidence of the sales to each category of clients remains admissible under Rules 403 and 404.[13]

---

[13] The Government anticipates that at least one witness will testify regarding that witness's participation in Fishman's operation, which will include that witness's description of her participation in these illicit foreign sales and sales to non-racing clientele. As such, the Government anticipates discussion of these sales as part of that witness's description of her own prior bad acts and to give context to her description of her role working under Fishman's direction and alongside Giannelli. *See e.g.*, *United States v. Diaz*, 176 F.3d 52, 89 ("it is well established that the government can develop impeachment material during direct examination of a cooperating witness, who testifies pursuant to a proffer agreement, in order to anticipate questions on cross-examination that the government was concealing a relevant fact" (citing *United States v. Cosentino*, 844 F.2d 30, 33 (2d Cir. 1988)); *United States v. Rivera*, No. 13 Cr. 149, 2015 WL 1875658 at * 8 (E.D.N. Y. Apr. 22, 2015) ("the government is permitted to elicit impeachment material pursuant to *Giglio* on direct examination 'in order to defuse the impact of bad acts on the witnesses' credibility and to avoid the appearance that the Government is concealing impeachment evidence from the jury" (citing *United States v. Townsend*, No. 06 Cr. 34, 2007 WL 1288597, at *7 (S.D.N.Y. May 1, 2007) *aff'd sub nom. United States v. Mercado*, 573 F.3d 138 (2d Cir. 2009)).

## XII.  The Defendants Should Be Precluded From Offering Expert Witness Testimony by Dr. Clara Fenger, DVM

Seth Fishman proposes calling as an expert witness Dr. Clara Fenger, DVM, to opine on the following: (1) the "clinical pharmacology" of Seth Fishman's drugs; (2) "[t]he safety and efficacy of these products when administered to racehorses; (3) "[t]he propriety of using these products for the purpose of maintaining the health and welfare of horses involved in racing; and may additionally "provide testimony regarding appropriate standards for the practice of veterinary medicine, including the maintenance and treatment of herd animals such as a stable of horses." *See* Def. Expert Witness Notice at 1-2 (ECF No. 562).  Defense counsel submitted a two-page letter listing the aforementioned topics of anticipated testimony, and to date has not provided elaboration as to the drugs Dr. Fenger has evaluated or the methodology by which she arrived at the conclusion that all of Fishman's products are safe and effective.  At the Government's request, counsel provided a copy of Dr. Fenger's resumé, but has not otherwise provided the records provided to Dr. Fenger which underpin any expert opinion that she might offer in this case,[14] any reports by Dr. Fenger prepared in connection with this case, or any 3500 material.[15]  Dr. Fenger's testimony should be precluded in its entirety, both, because the

_____

[14] The defense noted that Dr. Fenger "will be provided with exhibits and lists of veterinary products seized from the home of Dr. Fishman and the offices of his business . . ." and will further be "provided with exhibits including lists of items purportedly dispensed by Dr. Fishman and others . . . contained both in the discovery and 3500 material provided to defense counsel in this case." Def. Expert Witness Notice at 1.  Seth Fishman has not provided to, or listed for, the Government the specific materials that have been or will be provided to Dr. Fenger, relying instead upon the generic references to discovery, 3500 material, and exhibits.

[15] On November 29, 2021, the Government asked defense counsel whether the defendant intended to provide any supplemental materials to augment his expert witness notice in advance of the deadline to file motions *in limine*. Defense counsel offered to provide a detailed summary of Dr. Fenger's opinions and anticipated testimony within one week, *i.e.*, by December 6, 2021.  As of the date of this filing, the Government has not received any additional materials from defense counsel and has consequently moved *in limine* to preclude Dr. Fenger's testimony to preserve the

defense's notice is substantively incomplete, and because none of Dr. Fenger's opinions are admissible under Rule 702 insofar as they are unsupported and not based on facts, data, reliable principles, or specialized knowledge, and because they concern issues that will serve only to sow confusion and distract the jury.  At the least, if the Court concludes that the defense's expert notice of Dr. Fenger is substantively sufficient, prior to admitting such testimony, the Government would request the right to subject Dr. Fenger's purported expertise to a *Daubert* hearing to evaluate the relevance and reliability of Dr. Fenger's proposed testimony.

A.   Applicable Law

a. Rule 702

The defendant is required to "give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial."  Fed. R. Crim. P. 16(b)(1)(C).  "This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."  *Id*.  Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods, and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The party that proffers expert testimony bears the burden of showing that it is admissible.  *See Bourjaily* v. *United States*, 483 U.S. 171, 175-76 (1987).  The trial court must also

---

Government's objection to the admission of her testimony. The parties are continuing to confer regarding this issue and will alert the Court if an agreement has been reached.

find that the proposed testimony is both relevant and reliable prior to admitting it into evidence. *Daubert* v. *Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-90 (1993); *see Kumho Tire Company, Inc.* v. *Carmichael*, 526 U.S. 137, 141 (1999). Specifically, the trial judge has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. The trial judge's exclusion of expert testimony will be affirmed unless it constitutes an abuse of discretion. *See General Elec. Co.* v. *Joiner*, 522 U.S. 136, 139, 142 (1997).

In *Joiner*, the Supreme Court explained that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." 522 U.S. at 146; *see Amorgianos* v. *Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) (district court should undertake a rigorous examination of the facts on which the expert relies, the expert's methodology, and the application of that methodology to the facts). Applying Rule 702, the Court must determine whether the expert's reasoning and the methodology underlying her testimony is valid, and whether that reasoning or methodology was applied reliably to the facts, so as to be relevant and helpful to the jury. *See Kumho Tire Co.*, 526 U.S. at 148-49. "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos*, 303 F.3d at 266 (citations omitted).

### b. Rule 703

Though an expert may base an opinion on facts or data upon which other "experts in the particular field would reasonably rely," Rule 703 of the Federal Rules of Evidence precludes an

expert from disclosing to the jury "facts or data [that] would otherwise be inadmissible" unless the court determines that their probative value "substantially outweighs their prejudicial effect."  Fed. R. Evid. 703.  Thus, experts cannot be used as a substitute to calling witnesses to the events or facts at issue.  Any testimony along these lines would constitute impermissible hearsay.  *See*, *e.g.*, *United States* v. *Mejia*, 545 F.3d 179, 197 (2d. Cir. 2008) ("The expert may not, however, simply transmit hearsay to the jury. . . .  Otherwise, the expert is simply repeating hearsay evidence without applying any expertise whatsoever." (citations and quotations omitted)); *see Highland Capital Mgmt., L.P.* v. *Schneider*, 551 F. Supp. 2d 173, 180, 183 (S.D.N.Y. 2008) ("[The expert] has no personal knowledge of these facts and they are lay matters that the jury is capable of understanding and deciding without [the expert's] testimony.").

For the same reason, an expert cannot speculate as to the credibility, state of mind, or motivations of others.  *See, e.g.*, *United States* v. *Scop*, 846 F.2d 135, 142 (2d Cir. 1988) ("[E]xpert witnesses may not offer opinions on relevant events based on their personal assessment of the credibility of another witness's testimony."); *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469-70 (S.D.N.Y. 2005) (rejecting expert's attempt to speculate "regarding the state of mind and motivations of certain parties" and as to the "knowledge possessed by defendants and non-parties"); *LaSalle Bank Nat'l Ass'n* v. *CIBC Inc.*, 2012 WL 466785, at *7 (S.D.N.Y. Feb. 14, 2012) ("Additionally, an expert may not testify as to facts not within his personal knowledge, and may not opine as to a party's state of mind, whether a party acted in bad faith, or as to the credibility of witnesses").

### c. Rule 704

The Federal Rules of Evidence place additional limitation on the admission of expert testimony.  Specifically, the Rules state that:

42

> In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the offense or of a defense. Those matters are for the trier of fact alone.

Fed. R. Evid. 704(b). Moreover, a district court must exclude expert testimony that "expresses a legal conclusion." *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992) (collecting cases). As the Second Circuit explained, "[e]ven if a jury were not misled into adopting outright a legal conclusion proffered by an expert witness, the testimony would remain objectionable by communicating a legal standard—explicit or implicit—to the jury." *Id*. at 364. Further, an expert "is not qualified to compete with the judge in the function of instructing the jury." *Id*.; *see United States v. Nersesian*, 824 F.2d 1294, 1308 (2d Cir. 1987) (recognizing the risk "that an expert may come dangerously close to usurping the jury's function").

B. Discussion

### a. Fishman's Expert Witness Notice Is Substantively Inadequate

Seth Fishman's expert notice regarding Dr. Fenger's proposed testimony is not substantively "meaningful," as required by Rule 12.2. Federal Rule of Criminal Procedure 16(b)(1)(C) requires the defendant to provide the Government with notice of expert testimony which must "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." The defendant's two-page expert witness notice fails to establish particulars regarding Dr. Fenger's opinions or the bases and reasons for those opinions. Instead the letter, in summary fashion, lists three confirmed areas in which Dr. Fenger is expected to opine, namely, the "clinical pharmacology" of Seth Fishman's drugs and the safety, efficacy, and "propriety" of those drugs, as well as opinions she will provide regarding applicable standards for veterinary practice. Def. Expert Notice at 1-2. Beyond generically listing such topics, the

43

notice does not include any details regarding the scope or substance of Dr. Fenger's anticipated testimony; for example, defense counsel has not yet provided the Government with the list of drugs on which Dr. Fenger is expected to opine, the bases or methodology for her conclusions that these drugs are safe or effective, or the measure by which she will opine on "[t]he propriety" of using such drugs.  The defense's notice provides no further specificity, which is fatal under Rule 12.2.

Even if there were no procedural defects with the defense's notice, the proffered expert testimony is impermissible for the additional reason that the notice fails to establish that Dr. Fenger's conclusions are "based on sufficient facts or data" or that "the testimony is the product of reliable principles and methods."  Rule 702(b), (c).  Without further elaboration as to the substance of Dr. Fenger's proposed opinions or qualifications to render those opinions, "there is simply too great an analytical gap between the data and the opinion proffered," *Joiner*, 522 U.S. at 146, to admit Dr. Fenger's testimony.

### b. Dr. Fenger Is Offered to Opine on Irrelevant Issues

Several topics on which Dr. Fenger is expected to opine ought to be excluded under Rules 401 and 403 as irrelevant and unduly prejudicial, and under Rule 702 as lacking scientific basis.  First, the defense seeks to offer testimony from Dr. Fenger as to "[t]he propriety of using [Seth Fishman's] products for the purpose of maintaining the health and welfare of horses involved in racing."  Dr. Fenger's proposed testimony is irrelevant without knowing the basis for Dr. Fenger's opinions, for example, the relevant drugs,[16] the proffered claims Seth Fishman or

---

[16] The Government's expert notice letter to defense counsel specified that the Government's proposed expert will offer opinions regarding any of the following fourteen drugs: (1) VO2 Max; (2) BB2; (3) BB3; (4) Serenity; (5) TB-7; (6) ITPlus; (7) BPB; (8) HP Bleeder and HP Bleeder

44

others made about the effects of those drugs, or the actual directions for use with respect to these drugs (if any). That a drug of a particular chemistry can have innocuous, or medically sound, applications is irrelevant if the claims made about the drug, and the directions for the drug's use (or the lack of any such directions), do not contemplate the administration of that drug to promote the "health and welfare" of the animal. For example, a proper dosage of anabolic steroids *can* be used as a course of treatment to stimulate muscle growth for patients diagnosed with cancer or AIDS as part of a regimen intended to combat the serious health effects of those conditions. However, anabolic steroids may also be used in healthy athletes to stimulate muscle growth in order to enhance performance, not for any medical need, but to gain a competitive advantage. Consequently, any opinions Dr. Fenger anticipates rendering regarding the potential health benefits of a particular drug is entirely irrelevant absent any evidence that the drugs Seth Fishman and Lisa Giannelli (who is not a veterinarian) dispensed were provided to treat medical conditions, rather than provided for the purpose of enhancing a horse's performance. Seth Fishman advertised his drugs as those that would enhance a horse's performance; in that context, expert testimony that such drugs – in the hands of a medical professional with a valid VCPR – may legally be used to treat a condition is irrelevant to the conduct at issue.

Such testimony is further inadmissible absent some enumeration of which drugs Dr. Fenger believes were sold "for the purpose of maintaining the health and welfare of horses involved in racing." Def. Expert Notice at 2. Seth Fishman sold hundreds of products, including drugs that he created and manufactured in connection with Jordan Fishman, and those obtained

---

Plus; (9) Homeopathic Bleeder Paste; (10) EPM Double Kill; (11) Iron Sucrose; (12) GNRH (Gonadorelin Diacetate); (13) PSDS (Pain Shot DS); and (14) ACTH.

using Fishman's veterinary license. If Dr. Fenger's testimony is proffered for the purpose of

establishing that a handful of such products had a valid medical purpose, such testimony has no

relevance, and absent additional information, is unreliable as contemplated by Rule 702.  *See*

Fed. R. Evid. 702(a).  It is settled law that "[a] defendant may not seek to establish his innocence

. . . through proof of the absence of criminal acts on [other] specific occasions."  *United States v.*

*Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990).  Thus, assuming *arguendo* that Dr. Fenger (or some

other defense witness) could establish that some of the drugs Fishman or Giannelli sold were

distributed for a valid medical purpose, that evidence has no bearing on Fishman and Giannelli's

distribution of other, performance-enhancing drugs.  *See United States v. Clover Perez*, No. 09

Cr. 1153, 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (precluding defendant accused of

preparing false immigration applications from introducing evidence that she had accurately

advised certain clients about their eligibility for immigration benefits, or that she had prepared

certain truthful and accurate applications) (citing *United States v. Walker*, 191 F.3d at 336 (2d

Cir. 1999)); *see also United States v. Boykoff*, 67 F App'x 15, 20-21 (2d Cir. 2003) ("[E]vidence

of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant.").

Accordingly, Dr. Fenger's testimony regarding, the possibility of administering certain drugs for

a valid medical purpose should be precluded as irrelevant, confusing, and "wasting time" absent

additional information establishing that such testimony is relevant, and that its relevance is not

outweighed by undue prejudice.

Second, the defense seeks to offer the testimony of Dr. Fenger "regarding the appropriate

standards for the practice of veterinary medicine, including the maintenance and treatment of

herd animals such as a stable of racehorses." Def. Expert Notice at 2.  Such testimony is,

likewise, irrelevant. Seth Fishman, though a licensed veterinarian, did not practice veterinary

medicine in connection with his drug sales; he did not physically examine horses, diagnose medical conditions, or take any other steps to establish valid VCPRs. Fishman was a drug distributor who also maintained a veterinary license. Expert opinion testimony regarding the standards for proper veterinary practice are entirely irrelevant if the defense cannot first establish that Seth Fishman practiced as a veterinarian in the course of distributing the drugs he manufactured and sold.

Further, Dr. Fenger's opinions regarding the treatment of "herd animals" are similarly irrelevant and, without more, scientifically unreliable. The portions of the FDCA relevant to the charged conduct contain no legal distinction between animals and "herd animals," and there is otherwise no elucidation as to the basis for Dr. Fenger's opinion that a racehorse, even one stabled among other racehorses, are "herd animals." Indeed, the meaning of that term as employed by Dr. Fenger, or the relevance of the distinction between a "herd animal" and an animal not falling into that (undefined) category, goes entirely without discussion in Fishman's expert notice. In any event, and for purposes of the application of the relevant portions of the FDCA, the distinction between "herd animals" and animals, generally, is legally irrelevant.  For example, the Indictment charges that the misbranded drugs distributed in the course of the conspiracy were improperly labeled, were sold without adequate directions for use, and were not approved by the FDA as new animal drugs. None of those basic FDCA requirements rely on a distinction between the drug being administered to a herd or non-herd animal.  Dr. Fenger's opinions as to the "maintenance and treatment of herd animals" is, therefore, irrelevant to determining whether such drugs were misbranded in those manners.

Particularly given the cursory conclusions in the defense's notice, and the absence of particulars regarding Dr. Fenger's methodology, reasoning, and the materials examined, Dr.

47

Fenger's expert testimony should be excluded. In the alternative, a *Daubert* hearing is appropriate before such testimony is presented to the jury to ensure that Dr. Fenger's conclusions are relevant and reliable, and that they are rooted in the facts of this case.

## XIII.  The Court Should Limit Cross-Examination as to Prior Conduct of Cooperating Witnesses

The Government anticipates calling, among other witnesses, two cooperating witnesses ("CW-1" and "CW-2," respectively), each of whom worked as assistant trainers to clients of Fishman and Giannelli, and each of whom the Government anticipates will testify to, among other things, Lisa Giannelli's practice of traveling to a racehorse training facility in order to sell drugs to trainers (including the cooperating witnesses and their employers), without prior veterinary examination and without regard to any medical need for those drugs, without the provision of a prescription, and/or without consultation with Seth Fishman in any veterinary capacity. In so testifying, each of these cooperating witnesses will testify regarding their own participation in criminal activity involving the receipt and distribution of misbranded and adulterated performance enhancing drugs (including drugs obtained from Fishman and Giannelli), and their intent, in so doing, to mislead (among others) state racing regulators and racetracks engaged in efforts to prevent doping.

The Government seeks a pretrial ruling precluding cross-examination of CW-1 regarding the following conduct, all of which was self-reported by CW-1 to the Government and none of which has resulted in a prior conviction[17]: ███████████████████████████

---

[17] Given the sensitivity of the information contained herein and the nature of the Government's motion, the Government has redacted portions of this filing and submitted an unredacted version of this filing to defense counsel and the Court. The Government respectfully requests that the Government's unredacted filing be maintained under seal.



██████████████████████████████████████████████████

██████████████████████████████████████ [19]

A. Applicable Law

The Federal Rules of Evidence limit the circumstances under which evidence of specific acts of a witness may be introduced into evidence. District courts have "broad discretion in controlling the scope and extent of cross-examination." *United States v. James*, 712 F.3d 79, 103 (2d Cir. 2010) (quotation marks omitted). It is well-established that the Court has "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, . . . confusion of the issues . . . or interrogation that is repetitive or only marginally relevant" to the issues in dispute. *United States v. Figueroa*, 548 F.3d 222, 227 (2d Cir. 2008) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)); *see also* Fed. R. Evid. 611(a) (noting that courts "shall exercise reasonable control" over cross-examination to "avoid needless consumption of time" and to "protect witnesses from harassment or undue embarrassment") and 611(b) (limiting scope of cross-examination of witnesses to subject matter of direct examination and matters affecting credibility of witnesses).

Federal Rule of Evidence 608 sets forth the rubric for impeachment by evidence of specific instances of past conduct. Rule 608(b) provides that "[e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." The Court "may, on cross-

---

[19] ████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████

examination, allow [those prior acts] to be inquired into," but only if such acts "are probative of the character for truthfulness or untruthfulness of . . . the witness." Fed. R. Evid. 608(b)(1).

Moreover, Rule 611 provides that "[c]ross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility," and that the Court should "avoid wasting time" and "protect witnesses from harassment or undue embarrassment." FED. R. EVID. 611. "It is settled that '[t]he scope and extent of cross-examination lies within the discretion of the trial judge.'" *United States* v. *Scarpa*, 913 F.2d 993, 1018 (2d Cir. 1990) (alteration in original) (quoting *United States* v. *Blanco*, 861 F.2d 773, 781 (2d Cir. 1988)). "As long as a defendant's right to confront the witnesses against him is not violated, limitations on cross-examination are not grounds for reversal," *United States* v. *Roldan-Zapata*, 916 F.2d 795, 806 (2d Cir. 1990), and "[t]he decision of the trial court to restrict cross-examination will not be reversed on appeal unless its broad discretion has been abused," *Maldonado-Rivera*, 922 F.2d at 956. "A trial judge does not abuse his [or her] discretion by curtailing cross-examination as long as the jury has 'sufficient information to make a discriminating appraisal of the particular witness's possible motives for testifying falsely in favor of the government.'" *Scarpa*, 913 F.2d at 1018 (quoting *United States* v. *Singh*, 628 F.2d 758, 763 (2d Cir. 1980)).

Even if certain prior conduct is relevant to truthfulness, the Court may still exclude cross-examination of such conduct if it finds that the "probative value [of the testimony] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; *United States v. Sasso*, 59 F.3d 341, 347-48 (2d Cir. 1995); *accord Bryant v. Serebrenik*, No. 15-CV-3762ARRCLP, 2017 WL 713897, at *2 (E.D.N.Y. Feb. 23, 2017) ("Such [prior] acts are only admissible insofar as they bear on a witness's propensity for truthfulness or

51

untruthfulness," and, even if the prior act does concern the witness's character for truthfulness under Rule 608(b), "the proponent of the evidence must satisfy the probative-prejudicial balancing test of Rule 403"); *United States v. Devery*, 935 F. Supp. 393, 407-08 (S.D.N.Y. 1996). In this context, evidence is unfairly prejudicial if it would invite the jury to decide an issue material to the outcome of the case for reasons that have nothing to do with the factual issues properly before the jury. *See United States v. Harvey*, 991 F.2d 981, 996 (2d Cir. 1993).

B. <u>Discussion</u>

The Court should preclude cross-examination concerning the witnesses' prior criminal and other culpable conduct listed above, none of which is probative of their character for truthfulness or any other legitimate line of inquiry, and all of which are unduly prejudicial. Importantly, preclusion of cross-examination of all the subjects discussed above related to CW-1 and CW-2 are particularly appropriate because the jury already will have " 'sufficient information to make a discriminating appraisal of the particular witness[es'] possible motives for testifying falsely and in favor of the government.' " *Devery*, 935 F. Supp. at 408 (quoting *Scarpa*, 913 F.2d at 1018 (other quotations and citations omitted)). The defendants will be able to cross examine each cooperator about the cooperation agreement to which he will testify, his participation in criminal conduct, and his other criminal conduct that is probative of the character for truthfulness. *See United States* v. *Laljie*, 184 F.3d 180, 192 (2d Cir. 1999) ("Cross-examination is not improperly curtailed if the jury is in possession of facts sufficient to make a 'discriminating appraisal' of the particular witness's credibility.").













## **CONCLUSION**

For the reasons set forth above, the Government's motions *in limine* should be granted.

Dated:      New York, New York
              December 1, 2021


                              Respectfully submitted,

                              DAMIAN WILLIAMS
                              United States Attorney


                  By:    _____/s/_____
                              Andrew C. Adams
                              Sarah Mortazavi
                              Assistant United States Attorneys
                              (212) 637-2340 / 2520


58